Mike ROBERTSON Appellant

v.

UNITED PARCEL SERVICE; Ronald Johnson, Arbitrator; James L. Kerr, Administrative Law Judge; and Workers' Compensation Board Appellees

No. 2001–SC–0054–WC.

Supreme Court of Kentucky.

Nov. 21, 2001.

Case Ordered Published by Supreme Court Jan. 17, 2002.

Wayne C. Daub, Louisville, Counsel for Appellant.

Thomas L. Ferreri, Kamp T. Purdy, Ferreri & Fogle, Lexington, William A. Miller, Sr., Ferreri & Fogle, Louisville, Counsel for Appellee, United Parcel Service.

## OPINION OF THE COURT

The claimant worked as a hod carrier for a masonry company and also worked for United Parcel Service (UPS), driving truckloads of packages from the respot area to areas where they were loaded onto airplanes by loading crews. He alleged that on January 3, 1998, he injured his low back while working for UPS. Although he missed only two days' work for UPS, he was not able to return to his masonry job for approximately three months and sought workers' compensation benefits. An Administrative Law Judge (ALJ) later determined: that the claimant failed to prove more than a temporary exacerbation of his pre-existing, nonwork-related spondylolisthesis; that he sustained no permanent disability as a result of his injury; that he was entitled only to the medical expenses that UPS had paid for treatment of the temporary flare-up of symptoms

from his spondylolisthesis; and that he was not entitled to temporary total disability benefits for the time that he missed from the masonry job. The decision has been affirmed by the Workers' Compensation Board (Board) and the Court of Appeals, and the claimant appeals.

First, the claimant argues that the ALJ erred by requiring objective medical evidence rather than objective medical findings when determining causation. A second argument is that he was entitled to future medical expenses that are reasonably related to his injury. Finally, he argues that although he was able to return to his UPS job, he was entitled to temporary total disability benefits for the period during which he was unable to return to his masonry job as well.

The record indicates that as early as 1996 the claimant was treated for pain in the left groin that was not associated with a specific injury. On April 23, 1997, he sought treatment from Dr. Baker after experiencing low back, leg, and buttock pain following an injury that occurred while lifting weights at home. His primary symptoms at the time were lower lumbar pain and hamstring tightness. Contemporaneous x-rays revealed first to second degree spondylolisthesis. The record also indicates that on July 16, 1997, the claimant sought treatment from Dr. Stearns for neck and low back pain following a nonwork-related automobile accident. He last saw the claimant on October 20, 1997, at which time the claimant had some chronic low back pain and tightness in his hamstrings. No neurological deficits were apparent.

The work-related injury occurred on January 3, 1998, after which the claimant underwent a course of physical therapy. A January 12, 1998, x-ray revealed grade 1 spondylolisthesis of L5/S1 but revealed no acute changes or other abnormalities. On February 11, 1998, he saw Dr. Ellis concerning the injury and indicated that he felt 95% better. He still had lower back pain as of March 25 and had been to a chiropractor who confirmed the presence of spondylolisthesis with an MRI.

On March 30, 1998, the claimant was referred to Dr. Puno. Despite the complaints of low back pain to Drs. Baker and Stearns following the nonwork-related incidents, Dr. Puno's notes indicated that the claimant never had any low back problems before the work-related incident but had significant pain thereafter. He also indicated that the claimant was presently feeling much better, was completely asymptomatic, and had no complaints of leg or back pain. He thought that the pre-existing spondylolisthesis was probably aggravated by the work-related incident, causing it to become symptomatic, and that the claimant could return to work without restrictions. In August, 1998, the claimant indicated that his pain was tolerable with medication and that he had jarred his back and was having pain in the thoracic region. X-rays revealed no progression of his spondylolisthesis.

Dr. Hargadon saw the claimant on July 22, 1998. Although his report indicates that he was informed of the work-related incident, the cervical "whiplash" from the automobile accident, and the fact that the claimant was diagnosed with spondylolisthesis after a weightlifting incident, it does not demonstrate an awareness that the claimant had been treated for low back pain before the work-related incident or of the prior treatment for groin and leg pain. It was Dr. Hargadon's opinion that the claimant had preexisting, nondisabling spondylolisthesis, that he had re-injured himself at UPS, and that his present complaints were due to that injury. He indicated that individuals with spondylolisthesis typically have buttock and groin pain,

that it does not take a major injury to aggravate the symptoms, that an aggravation produces symptoms for a few weeks or months, and that low back pain and tightness in the hamstrings are classical symptoms of the condition. He placed no restrictions on the claimant and reported no physiological changes. Dr. Hargadon assessed a 7% AMA impairment for the spondylolisthesis, and after admitting that it was difficult to state with certainty how much of the problem was due to the pre-existing condition and to work, he attributed half of the impairment to the work-related injury.

Finally, Dr. Baker performed an evaluation on November 11, 1998, at which time the claimant reported some lower lumbar pain but was "pretty asymptomatic" other than some hamstring tightness. Dr. Baker testified that spondylolisthesis could be expected to be exacerbated throughout a patient's lifetime by repetitive lifting, bending, or stooping, by twisting, or by other activities. He indicated that the claimant's condition warranted an AMA impairment when he first diagnosed it, before the work-related injury, but he saw no objective evidence that the incident at UPS caused a profound or significant change in the condition. Later, he explained that x-ray revealed no change since April, 1997, and that there continued to be no evidence of a neurological impairment, weakness, or reflex change. He indicated that the claimant had no work restrictions either in April, 1997, or after the work-related injury. He also noted that few occupations were more likely to aggravate spondylolisthesis than masonry work and that the claimant admitted that the job caused him to have back problems. When testifying at the hearing, the claimant indicated that his condition had been asymptomatic during the preceding two months.

The burden was on the claimant to prove every element of his claim. As effective December 12, 1996, the definition of "injury" refers to the traumatic event that causes a harmful change to the human organism as evidenced by objective medical findings. KRS 342.0011(1). It is undisputed that the work-related incident resulted in at least temporary symptoms of the claimant's nonwork-related spondylolisthesis and that the symptoms required medical treatment. But in order to qualify for an award of permanent partial disability under KRS 342.730, the claimant was required to prove not only the existence of a harmful change as a result of the work-related traumatic event, he was also required to prove that the harmful change resulted in a permanent disability as measured by an AMA impairment. KRS 342.0011(11), (35), and (36).

Contrary to the claimant's assertion, we find no indication that the ALJ thought that he could not award a permanent disability for the arousal of a pre-existing condition. Instead, the evidence and the ALJ's opinion make it clear that the only harmful change that the claimant experienced as a result of the work-related incident was a temporary flare-up of symptoms of the pre-existing, nonwork-related condition. In other words, the ALJ concluded that the claimant suffered a work-related injury but that its effect was only transient. It resulted in no permanent disability or change in the claimant's pre-existing spondylolisthesis. Thus, the claimant was not entitled to income benefits for permanent, partial disability or entitled to future medical expenses, but he was entitled to be compensated for the medical expenses that were incurred in treating the temporary flare-up of symptoms that resulted from the incident. In rejecting the claim for income benefits, the ALJ chose to rely upon Dr. Baker rather

than Dr. Hargadon, concluding that the claimant's AMA impairment existed before the alleged injury and was not affected by it. Dr. Baker's opinion that the claimant suffered no permanent impairment as a result of the injury was based upon a physical examination of the claimant both before and after the injury, comparative x-ray evidence, and the absence of evidence of neurological nerve root impairment, weakening, or reflex changes after the injury.

Having reviewed the evidence and the arguments of the parties, we conclude that there was substantial evidence that the claimant sustained no permanent disability as a result of the work-related injury and that a different finding was not compelled. *Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986). Furthermore, in view of the evidence that the work-related incident caused no permanent change in the claimant's condition and the evidence that he was asymptomatic long before the hearing, there was substantial evidence to support the conclusion that no future medical benefits were warranted.

KRS 342.0011(11)(a) defines temporary total disability as being the condition of an employee who has not reached maximum medical improvement and has not reached a level of improvement that would permit a return to employment. The claimant was unable to return to his masonry job for approximately three months but returned to work at UPS within days of his injury. He asserts that because he had not reached maximum medical improvement and was unable to return to his masonry job, he comes within the definition of temporary total disability for that employment and that he was entitled to benefits for temporary total disability based upon his average weekly wage in that employment.

Workers' compensation law is a statutory creation. As enacted by the legislature, KRS 342.730(1) authorizes income benefits for temporary total disability, but it does not provide benefits for temporary partial disability. Applying the standard that is set forth in KRS 342.0011(11)(a), it cannot be said that the evidence compelled a finding of temporary total disability on these facts.

The decision of the Court of Appeals is affirmed.

All concur.