246 S.W.3d 443 (2007)
SHELBY MOTOR COMPANY, INC., Appellant,
v.
Carl Q. QUIRE; Hon. J. Landon Overfield, Administrative Law Judge; and Workers' Compensation Board, Appellees.
No. 2006-SC-000884-WC.
Supreme Court of Kentucky.
November 1, 2007.
Rehearing Denied March 20, 2008.
Shelby Motor Company, Inc., Phillip J. Reverman, Boehl, Stopher & Graves, LLP, Louisville, KY, Counsel for Appellant.
Carl Q. Quire, Udell B. Levy, Clay, Kenealy, Wagner & Adams, Louisville, KY, Counsel for Appellee.

OPINION OF THE COURT
The claimant sustained back injuries in two work-related accidents. Based on findings that the second accident temporarily exacerbated the previous back injury and that the statute of limitations barred a claim for the first injury, the ALJ awarded a period of medical and temporary total disability (TTD) benefits for the second injury and dismissed the claim for the first injury. The Workers' Compensation Board (Board) affirmed, stating that it found no clear error in the decision and that the claimant failed to preserve in his brief to the ALJ an argument that the payment of TTD after the second injury tolled the statute of limitations for the first injury.
A two-to-one majority of the Court of Appeals determined that the Board erred because it affirmed the ALJ's decision to dismiss the 2002 claim under Calloway County Fiscal Court v. Winchester, 557 S.W.2d 216 (Ky.App.1977), and, therefore, that the question of limitations was preserved for its review. The majority held ultimately that TTD benefits paid when subsequent trauma exacerbates an injury will toll the period of limitations for the injury if it has not expired. Thus, the court reversed and remanded for the entry of an award.
We reverse because neither the ALJ nor the Board erred. The claimant raised the tolling argument at the hearing but abandoned it in his brief to the ALJ. Thus, the ALJ did not err in failing to consider the *444 argument and it was not preserved for appeal. Calloway County Fiscal Court v. Winchester, supra, is authority on these facts for the principle that work-related trauma may aggravate or exacerbate a previous injury but cause no compensable disability. It does not conflict with Robertson v. United Parcel Service, 64 S.W.3d 284 (Ky.2001), which states that if work-related trauma aggravates or exacerbates a pre-existing condition, causing it to require medical treatment but result in no permanent impairment rating, the worker has sustained a compensable injury and is entitled to what medical and TTD benefits the evidence permits.
The claimant was born in 1964 and has a high school education with a GED. He also has specialized training as an auto technician and is ASE and GM certified. He testified that he had injured his low back at work previously, in 1998 or 1999, but he had missed no work and did not file a claim. The problem had resolved after eight to ten weeks of chiropractic treatment. This appeal concerns incidents of work-related back trauma that occurred in October 2002 and on February 26, 2003.
The claimant testified that he injured his back while working in October 2002. He sought medical treatment and received two weeks of physical therapy. He testified that he missed only one day of work and returned to his regular duties without restrictions. Asked if he had back problems between the injury and February 2003, he stated that his back got a little sore after heavy work but that he was fine otherwise.
On February 26, 2003, the claimant slipped in a puddle of oil while helping to carry a transmission. He fell, hitting his head and shoulders, and the transmission fell on his thighs and lower legs. Medical records indicated that he sought treatment later that day at Jewish Hospital-Shelbyville for complaints of head, left shoulder, neck, and lower back pain. He gave a history of falling and hitting the back of his head and of being dazed but not unconscious. X-rays of the lumbar spine were normal, and Dr. Shields diagnosed only a head contusion and concussion without loss of consciousness. The claimant was given head injury instructions, taken off work for two days, and advised to follow up with his family physician. His neck pain increased, so he went to Norton Hospital's emergency room three days later.
On March 5, 2003, the claimant's family physician, Dr. Wallace, noted that the claimant complained of persistent pain and stiffness in the neck but denied back or lower extremity pain. Dr. Wallace diagnosed a probable neck sprain, ordered physical therapy, and kept the claimant off work until March 31, 2003. A cervical MRI showed no significant degenerative changes or nerve root compression.
On April 3, 2003, Dr. Wallace's physician's assistant noted that the claimant complained of severe low back pain. He indicated that he had experienced no recent trauma but had injured his back in October 2002, which resulted in several weeks of back pain. He stated that he had noticed a fleeting back pain about once a week for the past three to four weeks, but it had become very severe since his return to work. Noting that a lumbar spine x-ray showed a decreased disc space at L5-S1, Dr. Wallace ordered an MRI. A lumbar MRI performed on April 11, 2003, revealed degenerative disc disease and various other degenerative changes, including diffusely bulging discs from L3-4 through L5-S1 and significant abnormalities at L5-S1. On April 16, 2003, Dr. Wallace noted continued complaints of back pain in the lower lumbar area, which came on suddenly and dramatically about two weeks after the neck injury. He diagnosed low back pain, degenerative disc disease, and degenerative *445 arthritis, and he referred the claimant to Dr. Myers, an orthopedic surgeon.
On April 24, 2003, Dr. Myers noted that the claimant gave a three- or four-year history of episodic, mild back pain; of severe pain that resolved about three weeks after the October 2002 incident; of recurrent pain "everywhere" after the February 2003 fall; and of constant, dull lumbosacral pain since then. Dr. Myers noted that MRI revealed severe degeneration at L5-S1, which appeared to be chronic. He concluded that the symptoms were consistent with the disc degeneration and recommended continuing physical therapy. On June 12, 2003, he stated that the claimant was at maximum medical improvement (MMI) and had no permanent impairment rating.
Dr. Stewart, a specialist in physical medicine and rehabilitation, evaluated the claimant in August 2003. He received a history of two work-related accidents, the first on October 9, 2002, and the second on February 26, 2003. He noted from medical records that the claimant complained of low back pain after the first accident and underwent six physical therapy sessions between October 16 and 28, 2002. The claimant reported that his pain resolved and that he returned to work and felt well until he was injured again on February 26, 2003. After summarizing the subsequent medical evidence, Dr. Stewart noted that a decompression of the lumbosacral spine had been considered but that the claimant had chosen not to have the procedure. Dr. Stewart limited lifting to no more than 50 pounds to the waist and 40 pounds overhead and limited carrying to no more than 40 pounds for distances of 20 feet or less. He assigned a 13% permanent impairment rating under DRE lumbar category II and stated that the claimant probably injured his back in 2002 and re-injured it in 2003, but he did not allocate the permanent impairment rating to either or both injuries.
The claimant's application for benefits alleged that he injured his back, neck, lower body, and right shoulder on February 26, 2003. He filed it on March 16, 2005, which was within two years after the last TTD payment for the injury. Although the employer admitted that the claimant sustained a compensable injury that occurred or became disabling on that date, it contested the amount of compensation he was owed.
Dr. Best evaluated the claimant for the employer on June 9, 2005, and performed a functional capacity evaluation. He concluded that the claimant reached MMI in June 2003 and presently was able to perform heavy-duty work. Although he assigned no cervical spine impairment, he placed the claimant in DRE lumbar category II due to the disc space narrowing at L5-S1 but characterized it as a pre-existing condition. Noting that the claimant had a chronic, active low back condition dating to 2002, Dr. Best found no objective evidence that the 2003 injury made the condition worse or resulted in permanent impairment.
The claimant testified that the employer paid TTD benefits through March 30, 2003, and accommodated his subsequent physical restrictions. Yet, he was able to work only 40 to 60 hours bi-weekly rather than the 80 to 120 hours that he had worked before the accident. He stated that the employer had helped him further by placing him on salary, which reduced but did not eliminate the loss of income.
Like the claimant's application for benefits, the Benefit Review Conference Memorandum does not mention the 2002 accident or injury. It indicates that the employer continued to accept the claim for the 2003 injury as being compensable but contested the extent and duration of *446 disability. The ALJ noted at the hearing, however, that the evidence referred to two accidents and asked the parties whether the claim involved one or two back injuries. In the discussion that followed, the employer asserted that the statute of limitations barred a claim for the 2002 injury; whereas, the claimant asserted that TTD paid after the 2003 injury tolled the period of limitations for both injuries. The ALJ permitted the claimant to amend his claim to include the 2002 injury; permitted the employer to assert that KRS 342. 185's two-year statute of limitations barred compensation for the 2002 injury; and directed the parties to present arguments on the matter in their briefs.
The claimant's brief argued only that any injuries before February 26, 2003, were minor and resulted in no work restrictions; that "the claimed injury either occurred or became disabling on February 26, 2003;" and that the employer admitted that the claimed injury either occurred or became disabling on February 26, 2003. The brief did not raise an alternative argument that voluntary TTD benefits paid after the 2003 accident tolled the period of limitations for the effects of both accidents. Nor did it assert that the employer's alleged failure to notify the Office of Workers' Claims when it terminated TTD benefits after the 2003 injury precluded the employer from asserting a limitations defense regarding the 2002 injury. Addressing the argument that was made, the employer asserted that the 2003 accident caused no permanent impairment rating.
The ALJ determined that the back injury causing the permanent impairment rating that Dr. Stewart assigned occurred in 2002; however, the statute of limitations barred a claim for the 2002 injury. Citing Calloway County Fiscal Court v. Winchester, supra, and finding that the 2003 injury exacerbated the pre-existing back condition, the ALJ determined that the claimant was not entitled to permanent income or medical benefits for the injury but was entitled to TTD and medical benefits through March 30, 2003.
The claimant argued in his petition for reconsideration that if the 2003 accident exacerbated the injury that occurred in 2002, then the payment of TTD benefits in 2003 tolled the period of limitations for both accidents until March 30, 2005. Thus, his claim was timely. Among other things, he also alleged that the employer failed to notify the Office of Workers' Claims when it terminated TTD and, therefore, was barred from raising the question of limitations for either injury. H.E. Neumann Co. v. Lee, 975 S.W.2d 917 (Ky.1998). The ALJ denied the petition on the ground that it raised no patent error in the opinion and award.
Although the claimant raised the tolling argument on appeal, the Board noted that the ALJ permitted him to amend his claim belatedly to allege the 2002 injury, permitted the employer to assert that the claim was barred by a straightforward application of the two-year limitations period, and directed the claimant to address the question of limitations in his brief. Yet he failed to do so. Thus, the Board concluded that the ALJ did not err in applying the two-year limitations period. Nor did the ALJ err in awarding a period of medical and TTD benefits for the exacerbation that occurred in 2003 because, under Robertson v. United Parcel Service, supra, the 2003 accident technically caused an injury, albeit a temporary one.
Calloway County Fiscal Court v. Winchester, supra, concerned a 1974 claim that was decided under definitions of "injury" and "disability" that were different from those enacted in 1996. At that time, the Board was the fact-finder. A Board-appointed *447 physician stated that the second of two work-related incidents was of "no consequence" and that the worker's disability was solely attributable to the first incident. The Board stated that the worker injured his back, had a period of TTD, returned to work with a different employer, and later "aggravated his injury when he mopped a floor." He never returned to work. Thus, the Board placed all liability for temporary and permanent income benefits on the employer that was responsible for the first incident, and the court determined that substantial evidence supported the decision.
KRS 342.0011(1) defines the term "injury" as a work-related traumatic event that is "the proximate cause producing" a harmful change in the human organism. The court determined in Robertson v. United Parcel Service, supra, that the definition requires a work-related traumatic event that exacerbates a pre-existing condition and causes it to be symptomatic to be viewed as being an "injury." The court also determined that a harmful change that is temporary may warrant only limited medical and TTD benefits. FEI Installation, Inc. v. Williams, 214 S.W.3d 313 (Ky.2007), explained subsequently that the 1996 Act does not define "disability" generally but equates it with "impairment," i.e., "a loss, loss of use, or derangement of any body part, organ system, or organ function," which may or may not be permanent or rise to the level that warrants a permanent impairment rating. An injury must result in a permanent impairment rating to warrant permanent income benefits under the Act.
Calloway County Fiscal Court v. Winchester, supra, did not involve a period of TTD after the second incident, and the decision did not mention medical benefits. It stands for the principle that work-related trauma may aggravate or exacerbate a previous injury but cause no compensable disability. That principle does not conflict with Robertson v. United Parcel Service, supra, which states that if work-related trauma aggravates or exacerbates a pre-existing condition, causing it to require medical treatment but result in no permanent impairment rating, the worker has sustained an injury and is entitled to what medical and TTD benefits the evidence permits.
The claimant's application was amended to allege two work-related injuries, one in 2002 and one in 2003. Although he argued at the hearing that TTD benefits paid after the 2003 injury tolled the periods of limitations for both injuries and although the ALJ directed him to address that argument in his brief, he abandoned it and asserted that the 2003 incident caused his disability. The ALJ found that the 2002 incident caused his permanent impairment rating, that KRS 342.185 barred a claim for the 2002 injury, and that the 2003 incident caused a temporary exacerbation of the 2002 injury, which resulted in a period of TTD and necessitated a period of medical treatment. Substantial evidence supported the findings of fact, and the conclusions of law and award were consistent with Chapter 342 as well as with Calloway County Fiscal Court v. Winchester, supra, and Robertson v. United Parcel Service, supra. Because the claimant abandoned the tolling argument, the ALJ did not err in failing to consider it or denying his petition for reconsideration. Nor did the Board err in concluding that it was not a proper basis for appeal.
The decision of the Court of Appeals is reversed.
All sitting. All concur.