# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MAY 21, 2009
NOT TO BE PUBLISHED

# Supreme Court of Kentucky



2008-SC-000803-WC

DATE 6|11|09 _Kelly Blaber_ D.C.

NANETTE WILLIS          APPELLANT

ON APPEAL FROM COURT OF APPEALS

V.        CASE NO. 2007-CA-002446-WC

WORKERS' COMPENSATION BOARD NO. 06-99450

FAMILY HOME HEALTH CARE, INC.;
HONORABLE R. SCOTT BORDERS,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD          APPELLEES

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

An Administrative Law Judge (ALJ) determined that the claimant's work-related knee injury produced a 4% permanent impairment rating and tripled her income benefit under KRS 342.730(1)(c)1. The Workers' Compensation Board affirmed regarding the amount of impairment that the injury caused but vacated the triple benefit and remanded for additional findings regarding the application of KRS 342.730(1)(c). The claimant appeals a decision by the Court of Appeals to affirm. We affirm because substantial evidence indicated that the injury caused no permanent impairment due to osteoarthritis or to the arousal of the pre-existing condition.

The claimant was born in 1960, holds a Master's degree in social work, and has begun classes for a Doctor's degree. She has worked for various agencies as a social worker since 1982. The defendant-employer provided aides who assisted patients with housekeeping, cooking, and self-care to enable them to remain at home rather than being placed in a nursing home. The claimant's job was to see patients or at least to speak with them on the telephone each month. She testified that the job required no physical activity. She simply talked with the patients.

The claimant twisted her right knee while stepping onto a curb in the course of her work on September 16, 2005. She first sought medical treatment about two weeks later from Dr. Reese and eventually had knee surgery. She returned to work after the surgery, but the employer eventually terminated her for reasons unrelated to the injury. She had injured her back in previous automobile accidents but testified that the injuries had resolved. She had also been treated for post-traumatic stress disorder (PTSD) for about 15 years, which included medication for depression and anxiety.[1] At the time of the hearing, she worked as a therapist for a different organization that she said was very accommodating. The parties stipulated that she earned a greater average weekly wage than when she was injured.

Dr. Reese, an orthopedic surgeon, first saw the claimant on September

---

[1] In addition to the knee injury, the claimant alleged that her psychological problems and need for medication increased after the injury. That portion of the claim is no longer at issue.

2

27, 2005. Based on diagnostic tests and the claimant's description of the injury, Dr. Reese determined that it caused tri-compartmental degenerative joint disease, arthropathy, a tear of the right lateral meniscus, a partial tear of the right anterior cruciate ligament (ACL), and a patellar misalignment. She performed arthroscopic knee surgery in January 2006, noting in the operative report:

> This . . . lady injured her knee at work. She had some
> arthritic discomfort in her knees prior to this but
> developed locking and [a] feeling of giving way and
> severe pain . . . .

Dr. Reese assigned a 22% permanent impairment rating to the injury, which included impairment from the meniscus and partial ACL tears as well as from the arousal of pre-existing dormant degenerative changes into disability. She thought that the claimant could probably sit for six hours per day but required the freedom to move about and also thought that the claimant's depression had worsened since the injury.

Dr. Jenkinson, an orthopedic surgeon, evaluated the claimant for the employer in November 2006. He ordered x-rays, which revealed signs of "very advanced generalized osteoarthritis of the right knee" and less severe osteoarthritis in the left knee. He acknowledged that the work-related injury may have caused or exacerbated the torn meniscus but attributed most of the right knee symptoms to the pre-existing osteoarthritis, which warranted a 20% permanent impairment rating. Addressing the relationship between the injury

3

and the arthritic condition he stated, "This severe arthritic deterioration could not in any way have been caused by the relatively minor injury of September 16, 2005." He thought that, at most, the injury caused a temporary exacerbation of arthritic symptoms. He thought that the claimant could perform sedentary work that required minimal standing or walking but would have difficulty in a job that required physical activity.

Dr. Jenkinson stated in subsequent reports that osteoarthritis results from wear and tear, which in the claimant's case was due to morbid obesity. In his opinion, the condition was active when the knee injury occurred. He stated that if the injury helped cause the torn meniscus and ACL, the surgery would warrant a 4% impairment rating. He explained that he based the 20% rating for osteoarthritis solely on the x-rays, which revealed a "complete loss of cartilage joint space," and that the degenerative changes Dr. Reese found in September 2005 could not have occurred within two weeks after the injury. Dr. Jenkinson took issue with Dr. Reese's opinion that none of the impairment rating she assigned was for pre-existing arthritis, noting that she found evidence of tri-compartmental degenerative change at the time of the initial assessment. He insisted that the arthritis merited a 20% impairment rating when Dr. Reese first saw the claimant and would have been symptomatic even had she not been injured. Taking issue with Dr. Reese's failure to characterize any portion of the 22% impairment rating that she assigned as being active, he noted that records from Carey Chiropractic and Dr. Evans (the claimant's

4

psychologist) pointed to complaints of symptoms in the knees in 2004. He discounted generalized arthritic complaints found in physical therapy records from 2004.

Relying on Dr. Jenkinson, the ALJ determined that knee injury caused a 4% permanent impairment rating but found the osteoarthritis and the entire psychological condition not to be compensable. The ALJ tripled the claimant's income benefit under KRS 342.730(1)(c)1, noting that she lacked the physical capacity to perform the type of work she performed when injured. The ALJ reasoned that she earned the same or a greater wage but did so at a "much less physically demanding job with accommodations being made for her condition."

Both parties petitioned for reconsideration. Granting the claimant's request for a specific finding concerning pre-existing impairment, the ALJ determined from Dr. Jenkinson's testimony that pre-existing, active osteoarthritis produced a 20% impairment rating. The ALJ denied the employer's request for a finding concerning the likelihood that the claimant would continue to earn the same or a greater wage than at the time of the injury. On that basis, the Board vacated and remanded for additional findings concerning the claimant's ability to continue to earn the same or a greater wage in the future.[2] The Board affirmed the decision regarding pre-existing, active impairment, and the Court of Appeals affirmed.

The claimant takes issue with the Court of Appeals' reliance on Roberts

---

[2] See Fawbush v. Gwinn, 103 S.W.3d 5 (Ky. 2003).

Brothers Coal Co. v. Robinson, 113 S.W.3d 181 (Ky. 2003), and Kentucky River Enterprises v. Elkins, 107 S.W.3d 206, 210 (Ky. 2003), when affirming. She relies on Finley v. DBM Technologies, 217 S.W.3d 261 (Ky. App. 2007), to assert that the ALJ erred by characterizing the impairment from osteoarthritis as being pre-existing, active, and non-compensable. Asserting that the employer submitted no evidence of any prior symptoms of osteoarthritis or treatment for the condition, she argues that the employer failed to meet its burden of proof because the finding was not supported by substantial evidence. Thus, the Board and the Court of Appeals erred by affirming it. We disagree.

KRS 342.0011(1) defines the term "injury" as being a work-related traumatic event that is the proximate cause producing a harmful change in the human organism. KRS 342.730(1) bases income benefits on impairment and disability that result from work-related injuries. Consistent with the fact that a pre-existing condition may be work-related, KRS 342.730(2) prohibits income benefits from duplicating those paid for a previous work-related injury.

McNutt Construction/First General Services v. Scott, 40 S.W.3d 854 (Ky. 2001), concerned the effect of the post-1996 version of KRS 342.0011(1), which excludes the natural aging process from the definition of "injury." The court determined that a compensable injury occurs when work-related trauma causes a pre-existing dormant condition "to become disabling and result in a functional impairment," regardless of whether the pre-existing condition is

6

work-related.[3] Rendered shortly thereafter, <u>Robertson v. United Parcel Service</u>, 64 S.W.3d 284 (Ky. 2001), explains that an injury occurs when work-related trauma causes a pre-existing condition to be symptomatic and that a temporary injury warrants only temporary benefits. The subsequent decisions in <u>Robinson</u>, <u>Elkins</u>, and <u>Finley</u> provide additional insight into Chapter 342's treatment of pre-existing conditions.

Consistent with KRS 342.730(1)(e), <u>Robinson</u> explains that pre-existing active impairment must be excluded from a partial disability award.[4] Although an injured worker must prove that the injury causes a permanent impairment rating in order to be entitled to permanent income benefits, an employer seeking to exclude some or all of the rating must show that it results from something other than the injury.[5] <u>Elkins</u> stands for the principle that not only the existence and cause of a permanent impairment but also the date for assigning a permanent impairment rating, the proper method for doing so, and the proper amount of the rating are medical questions.

When work-related trauma arouses or exacerbates a pre-existing condition, it has caused a harmful change in the human organism, <u>i.e.</u>, an

---

[3] <u>Id.</u> at 859. Medical evidence indicated that Scott had a post-injury impairment rating, half of which resulted from the natural aging process and half of which resulted from the work-related injury. The ALJ found him to be permanently and totally disabled and the court reaffirmed the finding.

[4] <u>Robinson</u> also determined that KRS 342.730(1)(a) requires pre-existing disability to be excluded from a total disability award. Thus, a finding of pre-existing impairment did not compel an exclusion from Robinson's total disability award because he was working without restrictions when his injury occurred.

[5] <u>Wolf Creek Collieries v. Crum</u>, 673 S.W.2d 735, 736 (Ky. App. 1984).

7

injury as defined by KRS 342.0011(1). Although impairment that results is compensable, the type and duration of benefits depends on whether the impairment is permanent or temporary.[6] To the extent that the condition is active immediately before the trauma occurs, it cannot have been aroused by the trauma and, thus, to that extent cannot be compensable. Finley concerned the legal criteria for determining whether a pre-existing condition is "dormant" or "active" immediately before a work-related injury occurs. The court determined that to be characterized as active, a pre-existing condition must both be symptomatic and warrant a permanent impairment rating.

The ALJ determined in the present case that the 4 % impairment rating Dr. Jenkinson assigned to the work-related injury was more persuasive than the 22% rating that Dr. Reese assigned.[7] Dr. Jenkinson based the 4% rating solely on the meniscal tear. He reported that the claimant's severe osteoarthritis was non-work-related; that the condition warranted the entire 20% impairment rating he assigned before the injury occurred; and that, in his opinion, the injury caused a temporary exacerbation of arthritic symptoms at most. His report, Dr. Reese's operative note, and the 2004 notes from Carey Chiropractic and Dr. Evans provided substantial evidence that the osteoarthritis was impairment ratable and symptomatic before the injury,

---

[6] See Robertson, 64 S.W.3d 284.

[7] Despite the claimant's assertion to the contrary, the ALJ made no finding that the claimant had active impairment from osteoarthritis. The ALJ noted that Dr. Jenkinson characterized the 20% rating that he assigned to osteoarthritis as being pre-existing active impairment.

which supported the ALJ's finding on rehearing that the condition was active and produced a 20% permanent impairment rating. Dr. Jenkinson's report also provided substantial evidence that even if the injury aroused the pre-existing condition, it caused no more than a temporary impairment and warranted no permanent impairment rating based on osteoarthritis.[8] Evidence that the injury aroused a dormant degenerative condition in the claimant's knee and produced a permanent impairment rating was not so overwhelming as to render the finding that was made unreasonable. Dr. Reese's testimony to that effect amounted to no more than a difference of medical opinion.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT,
NANETTE WILLIS:

Jeffrey Dale Hensley
P.O. Box 1004
1813 Argillite Road
Flatwoods, KY 41139


COUNSEL FOR APPELLEE,
FAMILY HOME HEALTH CARE, INC.:

John Warren Spies
Stephanie Dawn Ross
Ferreri & Fogle, PLLC
203 Speed Building
333 Guthrie Green
Louisville, KY 40202

---

[8] Special Fund v. Francis, 708 S.W.2d 641, 643 (Ky. 1986).