**FORD MOTOR COMPANY (LAP), Appellant**

v.

**Christopher CURTSINGER; Hon. Steven G. Bolton, Administrative Law Judge; and Workers' Compensation Board, Appellees**

**NO. 2016-CA-001423-WC**

Court of Appeals of Kentucky.

FEBRUARY 17, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: George T. T. Kitchen III, Louisville, Kentucky

BRIEF FOR APPELLEE: Ched Jennings, Louisville, Kentucky

BEFORE: KRAMER, CHIEF JUDGE; ACREE AND STUMBO, JUDGES.

## OPINION

KRAMER, CHIEF JUDGE:

Ford Motor Company ("Ford")[1] appeals a decision of the Board of Workers' Claims vacating, in part, a February 8, 2016 opinion and order of an administrative law judge (ALJ) dismissing a claim for income and medical benefits asserted by the appellee, Christopher Curtsinger. Specifically, the Board vacated and remanded for a determination of whether Curtsinger was entitled to an award of medical benefits due to an exacerbation of a pre-existing injury. Upon review, we find the Board committed no error or abuse of discretion. We therefore affirm.

Curtsinger filed his Form 101 on July 23, 2015, alleging he had sustained a work-related injury to his left shoulder on April 27, 2015. Curtsinger began by acknowledging he had injured his left arm and shoulder in 2009 while working on the assembly line for LAP; he had undergone two surgeries between 2010 and 2011 to treat his injury; and he has since experienced ongoing pain in that region of his body. He also acknowledged any claim arising from his 2009 injury and subsequent surgeries was time-barred, per Kentucky Revised Statute (KRS) 342.185. He pointed out, however, that after his 2009 injury and subsequent surgeries he was able to resume work activities on the assembly line with no restrictions or limitations. Therefore, he asserted, his 2009 injury and subsequent surgeries had not caused him any impairment whatsoever.

Curtsinger's argument was that he began to experience the gradual onset of a new and permanent work-related injury to his left arm and shoulder on or about May 8, 2014, a date well within the statute of limitations. He described his first indication of this injury as a "popping sensation" which occurred while working on the assembly line. He argued this new injury had culminated in additional, permanent pain in his left arm and shoulder, separate and apart from his ongoing pain in that region of his body, which ultimately became occupationally disabling on April 27, 2015 (the date one of his treating physicians, Dr. Michael Smith, provided him with work restrictions). He further argued he had achieved MMI regarding this new injury on October 30, 2015, the date another of his physicians, Dr. Jules Barefoot, determined he had sustained a 13% permanent partial impairment to his left arm and shoulder. He sought TTD income and medical benefits for the period between April 27, 2015, and October 30, 2015, and permanent partial disability income and medical benefits thereafter.

Ford, on the other hand, argued the entirety of Curtsinger's claim was time-barred because Curtsinger's 2009 injury and subsequent surgeries, in and of themselves and without consideration of any subsequent work-related events, produced Curtsinger's condition, disability, and symptoms as they existed from April 27, 2015, to October 30, 2015 and thereafter. Ford argued that the objective medical evidence demonstrated Curtsinger's complaints of pain in his left arm and shoulder had not been aggravated by work-related trauma. Rather, Ford asserted, an April, 2014 change in the duties associated with Curtsinger's assembly line work had provided Curtsinger with fewer opportunities to accommodate and avoid his existing pain

---

1. The parties also refer to Ford as "LAP" because Curtsinger's place of employment was the Ford Motor Company's Louisville Assembly Plant.

symptoms.[2]

Curtsinger's claim was submitted for final adjudication. In an order and opinion entered February 8, 2016, the ALJ began by reiterating the sole issue presented, noting on the first page that Curtsinger "claims that he has suffered a work-related injury causing harmful change evidenced by objective medical evidence resulting in a *permanent impairment* according to the AMA Guides to the Evaluation of Permanent Impairment, 5th Edition." (Emphasis added.) The ALJ then provided the following relevant analysis:

> In the case at hand, the claimed injury consists of alleged cumulative trauma to the left shoulder. Implicit in the finding of a gradual injury is a finding that no single instance of workplace trauma caused an injury of appreciable proportion. Hill v. Sextet Mining Corp., 65 S.W.3d [503] at 507 (Ky. App. [2001] 2000). For that reason, where the injury is due to cumulative trauma the date triggering the obligation to give notice is the "manifestation of disability," which is the date a worker first learns he has

sustained a gradual injury and knows it is due to his work. Alcan Foil Products, a Division of Alcan Aluminum Corp. v. Huff, 2 S.W.3d 96 (Ky. 1999). Moreover, in claims involving cumulative trauma, a worker is not required to give notice until first informed by a physician that the condition is work related. However, that is not the case here.

Here, however, it is undisputed that:

- **Claimant suffered a work-related and compensable left shoulder injury in December 2009.**

- **Claimant underwent left shoulder arthroscopic surgery with distal clavicle resection, decompression and labral tear debridement on October 8, 2011.**

- **Claimant was notified of the running of the 2-year statute of limitations on December 15, 2011 by the Department of Workers' Claims.**

- **Dr. Mark Smith evaluated claimant on April 27, 2015 and recommends work restrictions and impairment related to the 2010 left shoulder surgery.**

---

**2.** This point was elaborated upon in the "history" section of the April 27, 2015 IME report of Dr. Mark Smith. In relevant part, it states:

> Mr. Curtsinger presents a history of having originally injured his left shoulder while working as an assembler at Ford in December 2009. He states that he was working with a tire wheel hoist, operating manually, and was working with the arm at an above-shoulder level when he developed significant pain in his left shoulder. He subsequently was treated by Dr. Greg Rennirt and underwent arthroscopy of his left shoulder on December 8, 2010, with a decompression and distal clavical resection. Patient, after that procedure, never really regained normal function in his shoulder. He states that he underwent a second shoulder surgery for removal of heterotopic ossification with an open distal clavicle re-

section in 2011. Mr. Curtsinger states that after that procedure, he has continued to have popping and pain in his left shoulder. He notes that for a long period of time, however, he was on a job in which he was lifting primarily with the right shoulder, and during this timeframe, his left shoulder pain was tolerable. He states, however, that with the changing of jobs, on April 8, 2014, he was placed in a position where he was required to carry more metal with the arm away from his side and that with this had a significant increase in pain. He states that after that onset, he was seen at medical and subsequently referred back to Dr. Rennirt, who had an MRI arthrogram performed with findings of really no significant abnormalities in the area of the distal clavicle and no abnormalities within the rotator cuff or labrum.

- Dr. Stacie Grossfeld evaluated claimant on December 2, 2015 and recommends work restrictions and impairment related to the 2010 left shoulder surgery.

- Dr. Jules Barefoot evaluated claimant on October 30, 2015 and recommended an impairment rating of 13% WPI attributable 100% to work-relatedness. However, although he comments that it does appear that he sustained an aggravation to his left shoulder in May of 2014, he does not apportion what portions of disability would be attributable to the respective injuries, although he states that Mr. Curtsinger does have ongoing, significant loss of mobility and strength in his left shoulder as well as complaints of persistent pain.

Thus, several facts are self-evident. First, all of the examining physicians attribute *some percentage of whole person impairment* to plaintiff's left shoulder and relate that impairment to plaintiff's work. The difference among them is when and under what circumstances exactly the plaintiff acquired that impairment.

There is no doubt that a claim for benefits based on the work-related injury to the left shoulder of December, 2009 and resultant surgeries would be barred by the provisions of KRS 342.185. However, *at that time, there were no IME's of the plaintiff, and therefore, no impairment ratings awarded by any physician.* While we know from the plaintiff's testimony that his pain was never completely alleviated through surgery, he returned to work without restrictions until his apparent "exacerbation" of a previous injury in May of 2014 and his subsequent examination by Dr. Mark Smith with the attendant imposition of permanent restrictions.

In the instant claim, both Dr. Smith and Dr. Grossfeld attributed plaintiff's left shoulder problems to the work-related injury to the left shoulder of December 2009 and resultant surgeries. Dr. Barefoot makes no attribution other than to say the condition is "work-related".

Of persuasive value to me are the medical notes of the treating surgeon, Dr. Rinnert and his associate Dr. Harreld.

Dr. Harreld saw Mr. Curtsinger on June 17, 2014 for ongoing complaints of pain to the left shoulder. Dr. Harreld's diagnoses on that date were 1) Status post left shoulder distal clavicle excision x two and 2) left shoulder myofascial pain and periscapular muscle spasm. In other words, this was maintenance of problems resultant from Mr. Curtsinger's surgeries of 2010 and 2011.

Dr. Rennirt saw Mr. Curtsinger on August 18, 2014, primarily to go over the results of the FCE performed by Julie A. Smither, PT of KORT. At this time, Mr. Curtsinger was released to work with the permanent restriction that he work within the limits of the FCE, which I have outlined previously in this opinion.

Thus, as late as August 18, 2014, just 8 months prior to the IME of Dr. Smith that *assigned him a WPI of 11%,* of which the entire impairment was related to Mr. Curtsinger's subacromial decompression and distal clavicle resection procedure of October 11, 2010, the treating surgeons found no ongoing permanent injury, but rather a failure to fully recover from the surgery attendant to the December, 2009 work injury.

Dr. Barefoot's IME report fails to rebut any of those opinions and in fact *fails completely to ascribe any permanent disability* directly to any injury, cumulative or otherwise, subsequent to December, 2009.

The burden of proof in a Workers' Compensation claim is on the claimant (Plaintiff herein) to prove each and every essential element of his claim. Snawder v. Stice, 576 S.W.2d 276 (Ky. App. 1978). One of those essential elements is the timeliness of the filing of the claims and the jurisdiction thereby granted to the tribunal to consider the claim. Here, the defendant employer timely asserted a statute of limitations defense.

Although the plaintiff's complaints of ongoing left shoulder pain are compelling, I cannot grant relief where I do not have the legal authority to grant that relief. Unfortunately, I believe that I do not have the legal authority to grant relief because the plaintiff's claim is barred by the provisions of KRS 342.185.

(Emphasis added.)

The February 8, 2016 opinion and order then concluded with the following relevant "findings of fact and conclusions law," which likewise concentrated upon whether a permanent impairment rating has been ascribed to any injury Curtsinger may have sustained in the context of this case:

2. The plaintiff, Christopher Curtsinger suffered a work-related and compensable left shoulder injury in December 2009.

3. The plaintiff underwent left shoulder arthroscopic surgery with distal clacivle resection, decompression and labral tear debridement on October 8, 2011.

4. The plaintiff was notified of the running of the 2-year statute of limitations as to his December, 2009 injury on December 15, 2011 by the Department of Workers' Claims.

5. Dr. Mark Smith evaluated the plaintiff on April 27, 2015 and recommends work restrictions and impairment of *11% WPI* related to the 2010 left shoulder surgery that resulted from the December, 2009 left shoulder injury. In making this finding, I rely on the medical report of Dr. Mark Smith, which I find to be persuasive.

6. Dr. Stacie Grossfeld evaluated the plaintiff on December 2, 2015 and recommended an *8% impairment* related to the 2009 work related injury to the left shoulder. In making this finding, I rely on the medical report of Dr. Stacie Grossfeld, which I find to be persuasive.

7. Dr. Jules Barefoot evaluated the plaintiff on October 30, 2015 and assigned an impairment rating of *13% WPI* attributable 100% to work-relatedness. However, although he comments that it does appear that plaintiff sustained an aggravation to his left shoulder in May of 2014, *Dr. Barefoot does not apportion what percentages of disability would be attributable to the respective injuries*, although he states that Mr. Curtsinger does have ongoing, significant loss of mobility and strength in his left shoulder as well as complaints of persistent pain.

8. The report of Dr. Barefoot does not meet the standards of Brown-Forman Corp. v. Upchurch, 127 S.W.3d 615, 621 (Ky. 2004), to wit; [sic] "Medical causation must be proved to a reasonable medical probability with expert medical testimony . . . ." or Mengel v. Hawaiian-Tropic, 618 S.W.2d 184 (Ky. App. 1981), to wit; [sic] "Any injury not readily apparent to a layman must be supported

by medical testimony." Further, as he does not opine within reasonable medical probability that Mr. Curtsinger *suffered additional impairment in excess of, and in addition to that caused by the December, 2009 work injury*, his opinion does not meet the criteria articulated in Brummitt v. Southeastern Kentucky Rehabilitation Industries, 156 S.W.3d 276 (Ky. 2005).

9. Mr. Curtsinger's testimony as to his ongoing physical problems is compelling, but not decisive with regard to the etiology of his claimed cumulative trauma without supporting medical testimony. Medical causation must be proven by a medical opinion within "reasonable medical probability." Lexington Cartage Company v. Williams, 407 S.W.2d 395 (Ky. 1966).

10. Therefore, the preponderance of the evidence mandates a finding that Mr. Curtsinger's claim is in fact based on an *exacerbation* of his original December, 2009 injury to the left shoulder and consequential surgeries in 2010 and 2011. As he failed to timely file a workers compensation claim with regard to that injury, this claim is barred by the provisions of KRS 342.185.

(Emphasis added.)

As discussed, Curtsinger's only argument was that he had sustained an injury, subsequent to 2011, which had caused a *permanent and ratable impairment* to his left arm and shoulder. As emphasized above, the ALJ's findings and conclusions focused upon whether any physician had determined, from objective medical evidence, that Curtsinger had sustained an injury, subsequent to 2011, which had caused a permanent and ratable impairment to his left arm and shoulder. Upon finding no indication that a permanent and

ratable impairment had occurred outside of the statute of limitations period set forth in KRS 342.185, the ALJ determined the entirety of Curtsinger's claim was untimely and thus non-compensable.

With this in mind, much of the litigation that followed the entry of the ALJ's February 8, 2016 order was due to the ALJ's use of the word "exacerbation" in paragraph "10" of his findings of fact and conclusions of law.

The word "exacerbation" is sometimes used as a legal term of art in worker's compensation proceedings. The Kentucky Supreme Court has explained that "if work-related trauma *aggravates* or *exacerbates* a pre-existing condition, causing it to require medical treatment but result in no permanent impairment rating, the worker has sustained a compensable *injury* and is entitled to what medical and TTD benefits the evidence permits." *Shelby Motor Co., Inc. v. Quire*, 246 S.W.3d 443, 447 (Ky. 2007) (emphasis added); *see also Robertson v. United Parcel Service*, 64 S.W.3d 284 (Ky. 2001). In other words, a worker with a work-related *exacerbation* of a pre-existing condition sustains a new and separate "injury" within the meaning of KRS 342.0011(1), and is thus entitled to medical benefits, per KRS 342.020(1), at least until the date he or she returns to his or her pre-exacerbation, baseline state of health. *See FEI Installation, Inc. v. Williams*, 214 S.W.3d 313, 317-19 (Ky. 2007) (explaining workers may be eligible for medical benefits—but not income benefits—for an injury that does not warrant an impairment rating, but does result in permanent or temporary harm).

And, focusing upon the ALJ's use of the term "exacerbation," Curtsinger filed a petition for reconsideration to make an entirely new argument:

In numerical paragraph 10 on page 22 of the subject Opinion and Order, the ALJ notes that *the current symptoms are* an "exacerbation of his original December, 2009 Injury to the left shoulder and consequential surgeries in 2009 and 2011". Base [sic] upon such a finding, the Plaintiff at a minimum is entitled to an appropriate award of the related TTD and medical benefits until such time the Plaintiff reached his pre-injury base line. As such, the Plaintiff respectfully requests the assigned ALJ to correct such patent errors and to enter appropriate findings and award provisions in his favor.

(Emphasis added.)

Stated differently, Curtsinger inferred from the ALJ's use of the word "exacerbation" that the ALJ had made at least three implicit findings based upon probative, yet unidentified, medical evidence of record: (1) at some point after 2011, Curtsinger *had* sustained work-related trauma that caused a harmful change to his left arm and shoulder, and he had thus sustained an "injury" within the meaning of the Worker's Compensation Act; (2) the "injury" in question had caused him to depart from a baseline state of health for an appreciable period of time; and (3) sometime thereafter, he had returned to his baseline state of health. Curtsinger therefore claimed entitlement to TTD and an award of medical benefits for the indeterminate period of time he had apparently departed from an undefined baseline state of health and had subsequently returned to it.

The ALJ overruled Curtsinger's petition. In a March 14, 2016 order to that effect, the ALJ explained:

Plaintiff argues that there is error patently appearing on the face of the Opin-ion and Order of February 8, 2016, because the undersigned did not find that the plaintiff had suffered a new and separate injury in 2014 that became occupationally disabling on October 27, 2016.

Unfortunately, on the basis of the medical evidence in the record, which I discussed thoroughly, I did not find that to be the case. Instead, I relied on the medical opinions of Dr. Grossfeld and Dr. Smith, which I found to be the most persuasive medical evidence in the record. On the basis of those opinions, Mr. Curtsinger's claim is barred by the statute of limitations.

Thus, Plaintiff's allegation of error patently appearing on the face of the Opinion and Order is a disagreement with my interpretation of the medical evidence in the record, which is not within the scope of my review under the provisions of KRS 342.281. Francis v. Glenmore Distilleries, 718 S.W.2d 953 (Ky. App. 1986).

Further, the same time bar that constrains me from considering a permanent award also bars his claim for TTD.

Curtsinger then appealed to the Board of Workers' Claims. First, he argued overwhelming evidence compelled the conclusion that he had suffered a new and *permanent* injury brought about by cumulative trauma. He argued this permanent injury had caused him to become occupationally disabled on April 27, 2015; it warranted a permanent impairment rating as of October 30, 2015; and it entitled him to permanent partial disability income and medical benefits.

In the alternative, Curtsinger argued—as he had argued for the first time in his petition for reconsideration—that the

ALJ's February 8, 2016 order was erroneous in light of its specific finding that he had indeed sustained a new and *temporary* "exacerbation" injury:

> [T]he Petitioner takes issue with ALJ Bolton's failure to award TTD and medical benefits despite *his finding that Petitioner suffered* "an exacerbation of his original December, 2009 injury to the left shoulder and consequential surgeries in 2010 and 2011." Pursuant to Robertson v. United Parcel Service, 64 S.W.3d 284 (Ky. 2001), an injured worker may establish a temporary injury for which temporary total disability and/or temporary medical benefits may be paid, yet fail in the burden of proving a permanent harmful change to the human organism for which permanent benefits are authorized. As such, the Petitioner is entitled to, at minimum, an appropriate award of the related TTD and medical benefits until such time the Plaintiff reached his pre-injury base line.

(Emphasis added.)

Upon review, the Board determined the ALJ did not err in finding Curtsinger had no entitlement to TTD or PPD income benefits. But, the Board also determined the ALJ might have committed error in finding Curtsinger had no entitlement to some form of medical benefits. In relevant part, the Board explained:

> We note the ALJ dismissed Curtsinger's claim as being time barred by KRS 342.185 and relied upon Drs. Smith and Grossfeld in support of this determination. However, a review of their medical reports supports a dismissal of Curtsinger's claim for income benefits for failure to prove causation. Both Drs. Smith and Grossfeld attribute Curtsinger's current symptoms and impairment to, as stated by the ALJ in the February

8, 2016 Opinion and Order, "an exacerbation of his original December, 2009 injury to the left shoulder and consequential surgeries in 2010 and 2011." Their opinions comprise substantial evidence in support only of the ALJ's dismissal of Curtsinger's claim for income benefits; however, the ALJ's dismissal pursuant to KRS 342.185 is error, as Curtsinger was asserting a claim for an exacerbation of a previous condition.

> . . .

> Curtsinger is entitled to a determination regarding his entitlement to medical benefits, including future medical benefits. As the ALJ determined Curtsinger sustained "an exacerbation of his original December, 2009 injury to the left shoulder and consequential surgeries in 2010 and 2011," Curtsinger is entitled to a determination of his entitlement to medical benefits. The fact that Curtsinger did not file a Form 101 for the 2009 left shoulder injury is irrelevant. The issue in this claim is solely one of whether Curtsinger sustained an exacerbation of a preexisting condition and the extent of the exacerbation. Regardless of whether the preexisting condition is work-related, the exacerbation can still be found compensable. See Finley v. DBM Technologies, 217 S.W.3d 261 (Ky. 2007). Here, both physicians relied upon by the ALJ opined Curtsinger sustained an exacerbation of a preexisting condition; therefore, a determination of Curtsinger's entitlement to medical benefits is required.

The Board partially vacated the ALJ's February 8, 2016 opinion and order and directed the ALJ on remand to clearly determine if Curtsinger's 2009 injury and resulting surgeries in and of themselves, without consideration of any events alleged

in 2014 and thereafter, had produced Curtsinger's condition as it existed from April 27, 2015 through October 30, 2015. If not, the Board further directed the ALJ to determine, according to the existing objective medical evidence of record, whether Curtsinger had sustained an "exacerbation" within the applicable statute of limitations (*i.e.*, a change in his human organism which warranted no impairment rating, but was nevertheless temporarily or permanently harmful); whether Curtsinger's work was responsible for the exacerbation; and the extent and duration of the change for which medical benefits would be payable.

Ford then filed the instant appeal.

■ In the context of workers' compensation proceedings, the claimant has the burden of proof and the risk of nonpersuasion before the ALJ with regard to every element of his claim. *See Roark v. Alva Coal Corporation*, 371 S.W.2d 856 (Ky. 1963); *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky. App. 1984); *Snawder v. Stice*, 576 S.W.2d 276 (Ky. App. 1979). KRS 342.285 designates the ALJ as the finder of fact in workers' compensation cases, and gives the ALJ the sole discretion to determine the quality, character, and substance of evidence. As fact-finder, an ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same party's total proof. *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977).

Thereafter, an appeal of the ALJ's decision is permitted, but KRS 342.285(2) and KRS 342.290 collectively prohibit the Board or subsequent reviewing courts from considering new or additional evidence, or substituting their judgment for that of the ALJ as to the weight of evidence on questions of fact. The scope of administrative and judicial review of an ALJ's decision is limited to determining whether the ALJ "acted without or in excess of his powers;" whether the decision "was procured by fraud;" or whether the decision was erroneous as a matter of law. *See* KRS 342.285(2)(a)-(e) and KRS 342.290. Legal errors would include whether the ALJ misapplied Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion. *Id.*

■ With this in mind, we now turn to our analysis. On appeal, Ford does not question the correctness of the Board's determination that the issue of whether Curtsinger was entitled to medical benefits, due to a temporary injury warranting no impairment rating (*e.g.*, an "exacerbation"), was properly raised below and required a decision from the ALJ. Ford does not contest that the findings the Board directed the ALJ to make are proper for determining whether a worker has sustained a compensable injury warranting medical benefits, per KRS 342.020(1). Boiled down, Ford's argument is that the ALJ *correctly decided*, based upon substantial evidence of record, that Curtsinger was not entitled to medical benefits due to a temporary injury that warranted no impairment rating.

We disagree. To be sure, the ALJ's February 8, 2016 opinion and order ultimately labeled Curtsinger's "claim" as one for "exacerbation." It appears the ALJ decided the injury Curtsinger had alleged was at most an outgrowth of a prior injury. That aside, we concur with the Board's interpretation of the ALJ's disposition of this case. Nothing in the February 8, 2016

opinion and order, or the ALJ's March 14, 2016 order, indicates the ALJ *decided* Curtsinger did or did not suffer from an exacerbation; nor, for that matter, was there a definitive adjudication regarding an alleged temporary exacerbation injury. Perhaps owing largely to the procedural history of this case discussed above, the ALJ only disposed of Curtsinger's claim that he had suffered a *permanent* injury that had resulted in an impairment rating. The ALJ did not dispose of any claim alleging that Curtsinger was entitled to medical benefits for only a *temporary* injury that had resulted in *no* impairment rating.

And, in the absence of any decision on that matter, there is nothing further for this Court to meaningfully review. Accordingly, we agree with the Board's decision to vacate and remand this matter for that purpose.

ALL CONCUR.