**DOUBLE L CONSTRUCTION, INC. Appellant,**

v.

**Earl D. MITCHELL; Hon. Roger D. Riggs, Administrative Law Judge; and Workers' Compensation Board Appellees**

No. 2005–SC–0036–WC.

Supreme Court of Kentucky.

Nov. 23, 2005.

Rehearing Denied Feb. 23, 2006.

510

Douglas A. U'Sellis, U'Sellis & Kitchen, PSC, Louisville, Counsel for Appellant.

Robert L. Catlett, Jr., Louisville, Counsel for Appellee.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) determined that an injury to the claimant's eye while performing carpentry resulted in a period of temporary total disability (TTD) that ended when he was released to return to his usual job as a carpenter. The Workers' Compensation Board (Board) reversed the award on the ground that the claimant continued performing his concurrent, part-time janitorial job without interruption. *Robertson v. United Parcel Service*, 64 S.W.3d 284 (Ky.2001). Convinced that the Board misconstrued *Robertson*, the Court of Appeals determined that *Central Kentucky Steel v. Wise*, 19 S.W.3d 657, 659 (Ky.2000), controlled and reinstated the award. Although we agree that the claimant was entitled to TTD based on his temporary inability to perform carpentry and affirm in that regard, our reasoning is different.

The claimant was born in 1951 and was a high school graduate. He had spent his entire career as a carpenter in the construction business. In 2001, he began working for the defendant-employer. His injury occurred on January 6, 2003, when a nail struck by a co-worker flew up and hit the claimant in his left eye, lacerating the cornea and causing various complications. The claimant underwent three surgeries, the last of which was the implantation of a permanent acrylic intraocular lens. His physician prescribed corrective lenses and released him to return to work on August 18, 2003.

In addition to his full-time work as a carpenter, the claimant worked fifteen hours per week as a janitor. He had done so for Sky–Brite Corp. and its predecessor since 1995. The job involved emptying trash cans throughout Kroger's corporate headquarters. He explained that he took the second job to be certain that he could pay child support because construction work is seasonal. He testified that child support was deducted from his earnings with Sky–Brite; therefore, he did not take time off from the job when he injured his eye.

Medical evidence indicated that Dr. Karp performed the two initial surgeries and released the claimant to return to light-duty work on March 3, 2003. Concerned about the stitches that remained in his eye, the lifting required in the carpentry job, and effects of exposure to dust, the claimant did not return to carpentry. Dr. Karp's records indicate that the claimant telephoned on the following day to report that he had sought treatment elsewhere.

On March 4, 2003, the claimant sought treatment with Dr. Meyer, who noted that although the eye appeared to be healing well, some sutures were loose and some of the knots were exposed. He removed the loose sutures and over several weeks removed those that remained. On March 25, he took the claimant off work altogether. He performed the lens implant on May 5. When deposed on June 18, he stated that he thought the claimant had reached MMI, but he did not release him to return to work until August 18, 2003.

Dr. Meyer assigned a 8% AMA impairment, attributing a 1% impairment to loss of vision and a 7% impairment to difficulty with loss of contrast sensitivity, glare, and difficulty with vision in certain lighting. Like Dr. Meyer, Dr. Eiferman assigned a 1% AMA impairment for loss of vision. He added an additional 3% impairment for other factors such as those described by Dr. Meyer.

The parties stipulated that the claimant's average weekly wage from carpentry was $536.00. Taking into account concurrent earnings of $107.31 per week for the janitorial work, they stipulated that his combined average weekly wage was $643.31. They also stipulated that the em-

ployer paid voluntary TTD benefits at the rate of $357.35 per week from January 8, 2003, through March 3, 2003, for a total of $2,807.75. Among the contested issues was whether the employer overpaid or underpaid TTD.

When testifying at the hearing on September 25, 2003, the claimant stated that he had not returned to carpentry. He explained that he had refrained from doing so "to let my eye have plenty of time to heal" and that he continued to have increased sensitivity to sunlight, cold temperatures, and dust. He stated that the employer paid TTD benefits in the amount of $357.35 "every Friday afternoon" until March 3, 2003. He also stated that it made two subsequent benefit payments, on March 14 and 21, 2003, but that the total payments were not more than $2,800.00.

The employer asserted that it did not owe additional TTD. Furthermore, it relied on *Robertson v. United Parcel Service, supra,* in asserting that the claimant was not entitled to the TTD he received because he had worked continuously for Sky–Brite after his injury. It argued that *Robertson* stands for the principle that Chapter 342 views concurrent employments as though they are parts of one job. Thus, a worker whose injury temporarily prevents him from working a full day has only a temporary partial disability, which is not compensable. On that basis, the employer asserted that it was entitled to credit its voluntary TTD payments against the claimant's permanent partial disability award.

The ALJ acknowledged that the claimant continued to perform janitorial work despite his injury but noted that Dr. Meyer did not release him to return to work until August 18, 2003. Concluding that the injury prevented him from performing his usual work as a construction carpenter until that time, the ALJ awarded TTD at

the rate of $428.87 per week from the date of the injury until August 18, 2003, followed by permanent income benefits that were based on the 3% impairment Dr. Eiferman assigned. In a petition for reconsideration, the claimant pointed out that Dr. Eiferman had actually assigned a 4% impairment, consequently the ALJ granted the petition and amended the award.

Until December 12, 1996, Chapter 342 did not define temporary total disability. Addressing the absence of a statutory definition, the court explained in *W.L. Harper Construction Company v. Baker,* 858 S.W.2d 202 (Ky.App.1993), that temporary benefits are appropriate until the worker's condition has stabilized and is not expected to improve with further treatment. At that point, any lingering disability may be viewed as being permanent. Noting that Kentucky did not recognize the concept of temporary partial disability, the court determined that TTD benefits are appropriate until further medical treatment will not improve the worker's condition or until the worker is able to return to some type of work.

The employer bases its arguments on two statutes. As enacted effective December 12, 1996, KRS 342.0011(11)(a) governs the duration of a TTD award. It provides as follows:

> "Temporary total disability" means the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment.

KRS 342.140(5) provides that a worker's earnings from a concurrent employment of which the employer has knowledge "shall be considered as if earned from the employer liable for compensation." As such, they are included when determining the

average weekly wage for the purpose of awarding income benefits.

In *Central Kentucky Steel v. Wise, supra*, the court was called upon to interpret KRS 342.0011(11)(a) when determining whether the duration of a steelworker's TTD award was proper under the evidence. The employer asserted that TTD benefits should have terminated when Wise was released to return to work with a five-pound lifting restriction. Rejecting the argument, the court determined that "[i]t would not be reasonable to terminate the benefits of an employee when he was released to perform minimal work but not the type that is customary or that he was performing at the time of his injury." *Id.* at 659. Noting that the ALJ awarded TTD until Wise returned to work and that he did not reach MMI until about a month later, the court determined that substantial evidence supported the award. *Id.*

*Robertson v. United Parcel Service, supra*, involved TTD in the context of concurrent employments. Robertson's injury occurred while working for UPS. It caused him to miss only two days' work for UPS but to be unable to perform masonry work for about three months. The ALJ awarded medical expenses for a temporary flare-up of symptoms from Robertson's non-work-related back condition but no TTD or permanent income benefits. Among other things, Robertson argued on appeal that he had not reached MMI and that he was entitled to TTD benefits based on his average weekly wage in the masonry job. Although the court noted that KRS 342.730(1) authorized benefits for temporary total disability but not for temporary partial disability, it determined only that

the evidence did not compel a TTD award. *Id.*, 64 S.W.3d at 287.

In the present case, the claimant was injured while working as a construction carpenter. The ALJ acknowledged that the claimant continued to perform janitorial work without interruption. Noting that Dr. Meyer thought he had reached MMI by June 18, 2003, but did not release him to return to work until August 18, 2003, the ALJ awarded TTD from the date of injury until August 18, 2003, giving the employer credit for "for any of such benefits heretofore paid." [1]

▇▇▇ As defined by KRS 342.0011(11)(a), there are two requirements for TTD: 1.) that the worker must not have reached MMI; and 2.) that the worker must not have reached a level of improvement that would permit a return to employment. *See Magellan Behavioral Health v. Helms*, 140 S.W.3d 579, 581 (Ky. App.2004). In the present case, the employer has made an "all or nothing" argument that is based entirely on the second requirement. Yet, implicit in the *Central Kentucky Steel v. Wise, supra*, decision is that, unlike the definition of permanent total disability, the definition of TTD does not require a temporary inability to perform "any type of work." *See* KRS 342.0011(11)(c).

Two aspects of the philosophy underlying workers' compensation acts are: 1.) that injured workers are to be compensated for a loss of the ability to earn a living without regard to fault; and 2.) that the cost of an industrial injury should be borne by the employment in which the injury occurred, thereby encouraging the employer to promote workplace safety. The

---

1. When reciting the evidence, the ALJ failed to mention the claimant's testimony that the employer made two additional payments after March 3, 2003, but that he received no more than a total of $2,800.00. In any event, the employer did not file a petition for reconsideration or request any specific findings in that regard. Nor has it asserted that it is entitled to credit for paying TTD that exceeded the parties' stipulation.

Board was not convinced that factual differences between *Robertson v. UPS, supra,* and the present case were significant under KRS 342.0011(11). Although that view is not without logic, we are convinced that it is too restrictive when viewed in light of *Central Kentucky Steel v. Wise, supra.* When reinstating the claimant's award, the Court of Appeals reasoned that a worker should not be ineligible for TTD simply because his restrictions enabled him to perform menial work if they prevented him from returning to his "primary, pre-injury employment," later equating it to his "normal and customary employment." We have concluded, however, that *Wise* speaks only to TTD regarding the employment in which the injury occurred and makes no reference to menial work. Furthermore, *Robertson* makes no distinction based on primary or secondary employment.

▇▇▇▇ *Central Kentucky Steel v. Wise, supra,* stands for the principle that if a worker has not reached MMI, a release to perform minimal work rather than "the type that is customary or that he was performing at the time of his injury" does not constitute "a level of improvement that would permit a return to employment" for the purposes of KRS 342.0011(11)(a). 19 S.W.3d at 659. The case did not involve concurrent employments and referred only to Wise's job as a steelworker. We have concluded, therefore, that when the decision is applied to a case in which a worker is injured in one concurrent employment but is unable temporarily to perform another, both the customary type of work and the work the individual was performing at the time of the injury refer to work performed in the employment in which the injury occurred. We reach this conclusion, in part, because we are convinced that a worker whose injury renders him temporarily unable to perform the work in which

the injury occurred should not be penalized for performing what work he is able to do. Nor are we convinced that his employer should be absolved from liability for TTD benefits. The claimant's injury occurred in his employment as a construction carpenter; therefore, his customary work for the purposes of KRS 342.0011(11)(a) was construction carpentry, including the duties that he was performing at the time he was injured. It is undisputed that the injury rendered him unable temporarily to perform his customary work until August 18, 2003; therefore, he did not reach a level of improvement that would permit a return to employment until August 18, 2003.

▇▇▇▇ The purpose for awarding income benefits such as TTD is to compensate workers for income that is lost due to an injury, thereby enabling them to provide the necessities of life for themselves and their dependents. Consistent with the purpose of the benefit and workers' compensation philosophy, income benefits are paid by the employer in whose employment the injury occurs. KRS 342.730 and KRS 342.140 base the benefit on the worker's earnings in the employment and in any concurrent employment of which the employer has knowledge.

▇▇▇▇ Since December 12, 1996, permanent disability awards have been based on findings of AMA impairment or of impairment together with a complete inability to perform any type of work. KRS 342.0011(11)(b) and (c); KRS 342.730(1)(a) and (b). Therefore, an injury that causes a permanent disability regarding the job in which it occurred necessarily causes a permanent disability regarding a concurrent job as well. KRS 342.140(5) takes this into account by compensating a worker for a reduction in the ability to perform both the job in which the injury occurred and a concurrent job.

■ As defined in KRS 342.0011(11)(a), temporary total disability is not based on a finding of AMA impairment. Nor, as determined in *Central Kentucky Steel v. Wise, supra,* is it based on an inability to perform any type of work. As the present case illustrates, an injury causing only a temporary loss of the worker's ability to perform the job in which it occurred does not necessarily affect the individual's ability to perform a concurrent job. When it does not, KRS 342.140(5) is inapplicable.

■ Having considered the relevant statutes, we conclude that a worker is entitled to TTD benefits if a work-related injury results in a temporary inability to perform the job in which it occurred. If the injury also causes an inability to perform a concurrent job of which the employer has knowledge, income benefits are based on the wages from both employments by operation of KRS 342.140(5). If the injury does not cause an inability to perform a concurrent job, KRS 342.140(5) is inapplicable and income benefits are based solely on the wages from the job in which the injury occurred. In contrast, if a work-related injury does not prevent the worker from performing the job in which it occurred, the worker is not entitled to TTD despite an inability to perform a concurrent job. *Robertson v. UPS, supra.*[2]

The decision to award TTD until the claimant was able to return to construction carpentry was supported by both lay and medical evidence and was consistent with our interpretation of the relevant statutes.

Furthermore, the employer has failed to show that the findings upon which it was based were unreasonable. *Special Fund v. Francis,* Ky., 708 S.W.2d 641, 643 (1986). Although the ALJ appears to have awarded TTD on the basis of the claimant's combined earnings, any error in that regard is not preserved for our review.

The decision of the Court of Appeals is affirmed.

LAMBERT, C.J.; and COOPER, GRAVES, JOHNSTONE, SCOTT, and WINTERSHEIMER, JJ., concur.

ROACH, J., dissents by separate opinion.

Dissenting opinion by Justice ROACH.

The Workers' Compensation Board was correct and properly construed KRS 342.0011(11)(a) and KRS 342.140(5) in light of *Central Kentucky Steel v. Wise,* 19 S.W.3d 657, 659 (Ky.2000), and *Robertson v. United Parcel Service,* 64 S.W.3d 284 (Ky.2001). Therefore, I would reverse.

Workers' compensation is statutory. KRS 342.0011(11)(a) provides that:

"Temporary total disability" means the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment.

KRS 342.140(5) is mandatory and makes no exceptions. It provides:

When the employee is working under concurrent contracts with two (2) or

2. In the present case, the employer paid TTD benefits of $357.35 per week based upon the claimant's earnings in his carpentry job. Yet, when contesting his entitlement to TTD, the employer made an "all or nothing argument" and failed to assert that if he were entitled to TTD, his average weekly wage must be limited to his earnings from carpentry. Although the TTD award of $428.87 per week appears to have been based upon his earnings from both of his jobs, the employer failed to petition for reconsideration or to assert that there was a patent error in calculating the benefit. Under the circumstances, it waived any assertion at this time that the ALJ erred by including the janitorial earnings when calculating the benefit.

more employers and the defendant employer has knowledge of the employment prior to the injury, his wages from all the employers shall be considered as if earned from the employer liable for compensation.

Nothing in either statute implies a legislative intent to authorize temporary total disability (TTD) benefits based on a worker's inability to perform one of two concurrent jobs. An individual who continues to perform one of two concurrent jobs after an injury clearly is able to "return to employment." The majority opinion is simply awarding benefits for temporary partial disability, which are not available under KRS Chapter 342. *Robertson*, 64 S.W.3d at 287.

The majority relies upon *Wise* for the principle that if a worker has not reached maximum medical improvement, TTD is not precluded by a release to return to something less than the individual's customary work or the work performed at the time of the injury. What the majority overlooks is that *Wise* did not involve concurrent employments and that the injured worker did not work during the disputed period. In the present case, as in *Robertson*, the claimant's injury did not prevent him from continuing to perform one of his concurrent jobs. Therefore, Appellee Mitchell was not entitled to TTD because his post-injury condition permitted a return to employment. The majority has chosen to ignore the clear language of KRS 342.140(5) and, in doing so, has effectively amended the statute without a vote of the General Assembly. I respectfully dissent.