RENDERED: AUGUST 24, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

2016-SC-000081-WC

CHERYL BLAINE                                                          APPELLANT

V.
ON APPEAL FROM COURT OF APPEALS
CASE NO. 2015-CA-000267-WC
WORKERS' COMPENSATION BOARD
NO. 11-WC-01057

DOWNTOWN REDEVELOPMENT                              APPELLEES
AUTHORITY, INC.; HON. J. LANDON
OVERFIELD, FORMER CHIEF
ADMINISTRATIVE LAW JUDGE; HON.
ROBERT L. SWISHER, CURRENT CHIEF
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

## OPINION OF THE COURT BY JUSTICE HUGHES

### AFFIRMING

Appellant Cheryl Blaine suffered a work-related injury on June 26, 2007, returned to work after approximately seven months with accommodations and then suffered a second work-related injury on April 28, 2011. The second injury resulted in Blaine being found permanently totally disabled and that decision was not appealed. The matter before the Court concerns the proper disposition of Blaine's claim for benefits following her first injury. The Workers' Compensation Board remanded the matter to the

Administrative Law Judge (ALJ) because he erroneously concluded that Blaine had not claimed entitlement to permanent total disability (PTD) benefits following the first injury. She had so claimed and the ALJ was instructed to address that issue first on remand. If Blaine was not entitled to PTD benefits following the first injury, then the ALJ was required to determine the appropriate permanent partial disability (PPD) benefits pursuant to Kentucky Revised Statute (KRS) 342.730 and *Fawbush v. Gwinn*, 103 S.W.3d 5 (Ky. 2003). On Blaine's appeal, the Court of Appeals affirmed the Board's decision and we now, after careful review, likewise affirm.

## RELEVANT FACTS

As the Court of Appeals aptly noted, this has been a contentious case that has produced a voluminous record. A detailed discussion of the underlying facts and procedural issues is unnecessary to our disposition of the matter given the limited issues before us. Finding the Court of Appeals' statement of relevant facts and procedural steps prior to the case's arrival in that Court to be accurate and admirably succinct, we adopt it as our own, discussing any additional facts only as relevant to our analysis.

> Blaine, a fifty-four-year-old resident of Bowling Green, Kentucky, began working for the Downtown Redevelopment Authority, Inc. ("the Authority") in September of 1995. Ultimately, she became the Authority's Executive Director. On June 26, 2007, Blaine was working for the Authority when she injured her low back picking up a suitcase during an overnight conference. Blaine eventually had surgery on her back. Following her surgery, she returned to work for the Authority on January 28, 2008. In December of 2009, Blaine filed a Form 101 Application for Resolution of Injury Claim with the Department of Workers' Claims ("Department") seeking benefits as a result of her 2007 injury.

2

Blaine's claim was placed in abeyance pending additional treatment and settlement discussions.

On April 28, 2011, while Blaine's first claim was still pending, Blaine again injured her back at work while picking up trash from a former's employee's office. Blaine underwent surgery for this injury as well. She did not return to work after this injury. Blaine filed a claim with the Department as related to this second injury. Blaine's two claims were consolidated so that they could be heard together before the CALJ. Following an extensive discovery period, the CALJ conducted a benefit review conference ("BRC"), which was followed by a final hearing.

In an Opinion, Order and Award, rendered May 27, 2014, the CALJ determined that Blaine was entitled to permanent partial disability benefits for the June 26, 2007, work-related injury payable in the amount of $166.17 per week. This amount represented the CALJ's finding that the first injury resulted in Blaine having a 26% functional impairment to the body as a whole. The CALJ did not award any multipliers for the first injury. The CALJ determined that the second injury rendered Blaine totally and permanently occupationally disabled, and awarded her benefits accordingly.

Blaine filed a petition to reconsider, which the CALJ denied. Blaine then appealed to the Board. The Board affirmed in part, vacated in part, and remanded the claim to the CALJ for further findings. Specifically, the Board concluded that the CALJ failed to address whether Blaine's first injury rendered her totally and permanently disabled. Additionally, the Board concluded that the CALJ failed to conduct a proper analysis under *Fawbush v. Gwinn,* *supra.*

The Board remanded Blaine's claim to the CALJ as follows:

This claim is REMANDED for entry of an amended opinion and award determining Blaine's entitlement to PTD benefits due to the June 26, 2007, injury. Should the CALJ or ALJ as designated by the CALJ determine Blaine is not entitled to PTD benefits as a result of the June 26, 2007, injury, the CALJ or ALJ must then conduct an appropriate analysis of the third prong of the *Fawbush* analysis (sic) in conformity with the views expressed herein.

3

The Court of Appeals rejected Blaine's argument that if she did not receive PTD benefits following the first injury, she was entitled to PPD benefits pursuant to KRS 342.730(1)(c)1 which allows a multiplier of three when the employee does not retain the physical capacity to return to the type of work that she performed at the time of injury. In short, Blaine argued that a *Fawbush* analysis was unnecessary on remand because she was entitled either to PTD benefits or to PPD benefits enhanced by a multiple of three. The Court of Appeals concluded that the ALJ correctly found that either KRS 342.730(1)(c)1 or (c)2 could apply and then correctly proceeded to a *Fawbush* analysis but, as the Board found, erred in the third step of that analysis. Thus, the appellate court affirmed the Board's disposition of the case and its directions to the ALJ on remand. As noted, we agree with both the Board and the Court of Appeals regarding disposition of the issues on appeal.

## ANALYSIS

Blaine raises three issues on appeal, the first two of which are purely legal arguments and are closely related. Initially, Blaine urges this Court to revisit *Fawbush* and limit its analytical framework to those circumstances where the injured employee returns to work and is competitive with non-injured employees without any job modifications or accommodations. Second and relatedly, Blaine contends that the reference in KRS 342.730(1)(c)2 to an employee returning to work at a wage equal to or greater than the pre-injury wage means the employee must be working without any modifications, concessions or accommodations by the employer. Blaine's third argument is

4

that the ALJ erred in concluding that after the first injury Blaine continued to earn a wage equal to or greater than her pre-injury wage and would do so for the indefinite future. We begin our analysis with the applicable statute and *Fawbush.*

KRS 342.730 addresses income benefits for disability. If Blaine's entitlement to PTD benefits is rejected by the ALJ on remand, the determination of her PPD benefits is controlled by KRS 342.730(1)(c)1 and (c)2, as the ALJ recognized in his initial orders.

That portion of the statute states:

(c)   1.    If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this sub-section, but this provision shall not be construed so as to extend the duration of payments; or

       2.    If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

5

In *Fawbush*, this Court opined that by inserting "or" between sections (c)1 and (c)2, the legislature intended for only one of the sections to apply. 103 S.W.3d at 12. However, the Court recognized there could be permanent partial disability cases where either (c)1 or (c)2 could apply so it held that:

> an ALJ is authorized to determine which provision is more appropriate on the facts. If the evidence indicates that a worker is unlikely to be able to continue earning a wage that equals or exceeds the wage at the time of injury for the indefinite future, the application of paragraph (c)1 [the benefit enhanced by a multiplier of three] is appropriate.

*Id.*

Blaine's first two arguments, both of which focus on the meaning of "work," rely on the following KRS 342.0011(34) definition: "'Work' means providing services to another in return for remuneration on a regular and sustained basis in a competitive economy." From this statutory definition, Blaine maintains that an employee has not truly returned to "work" as that term is used in KRS 342.730(1)(c)2 and applied in *Fawbush* unless the employee "is fully competitive with non-injured employees without modifications and accommodations of the employee's disability." There is simply no basis for this construction of "work" in the language of the KRS 342.0011(34) definition.

In construing a statute, "our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551

6

(Ky. 2011). Looking at the KRS Chapter 342 definition of "work," it simply requires that a person provide services and receive remuneration on a regular and sustained basis in a competitive economy. Presumably, Blaine reads "competitive" as a springboard for her new definition but that adjective modifies "economy" and has nothing to say about the "services" that the individual worker has to offer. To read this definition as supporting the idea that "work" means performing a service without any sort of accommodation by the employer requires supplying words that the legislature did not include, something we cannot do under the guise of statutory construction. "A reviewing court cannot amend [a statute] by means of a so-called interpretation contrary to the plain meaning." *Lewis v. Jackson Energy Co-op Corp.*, 189 S.W.3d 87, 94 (Ky. 2005).

Blaine maintains that *Ira A. Watson Dep't Store v. Hamilton*, 34 S.W.3d 48 (Ky. 2000), aids her contention because therein this Court concluded that in determining whether a worker's disability was partial or total an individual assessment is required. "An analysis of the factors set forth in KRS 342.0011(11)(b) [permanent partial disability], (11)(c) [permanent total disability], and (34) [work] clearly requires an individualized determination of what the worker is and is not able to do after recovering from the work injury." *Id.* at 51. This observation about the individualized assessment necessary to determining whether a worker is totally or partially disabled is well-taken. However, the need for an individualized assessment in that context does not affect the statutory language at issue here. "Work" as noted, has a very

7

straightforward definition. Similarly, KRS 342.730(1)(c)2 is plain and to the point: "If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of the injury . . . ." The phrase "returns to work" has no modifiers and using the statutory definition in KRS 342.0011(34) simply requires that the worker go back into the workforce and receive remuneration for services at a wage equal to or greater than she received pre-injury. To the extent Blaine is requesting that we employ *Ira A. Watson* to superimpose an individualized reading of "work" onto the statute – "returns to work doing everything she did before in the same way she did before" without any accommodation or job modification – we decline. There is no language in the statute that would support that construction. Moreover, it seems clear that if KRS 342.730(1)(c)2 were read in that way it would undermine the concept of a partial disability.

Turning to the record in this case, Blaine returned to work approximately seven months after her first injury and was allowed to work from home, at first part-time and later full-time. She needed this accommodation because she was unable to climb the stairs to the Authority's second-floor offices. After the offices were moved in November 2009, she returned to working on-site, with the same job title and a higher salary. However, Blaine could not perform all of the duties she had previously performed including set-up, oversight and clean-up of various community events sponsored by the Authority.

On this evidence, the ALJ found that Blaine lacked the physical capacity to return to the type of work she was performing at the time of the injury. That

8

finding has not been disputed. These facts also led the ALJ to conclude that either KRS 342.730(1)(c)1 or (c)2 could apply, the former providing for a triple benefit due to her inability to return to the type of work she was performing and the latter providing an unenhanced benefit due to her return to work at a weekly wage equal to or greater than the average weekly wage she was making at the time of the injury. The ALJ opted for the latter. Understandably, Blaine would like for us to adopt a new reading of what it means to return to work in KRS 342.730(1)(c)2 because that would render that part of the statute (and a *Fawbush* analysis) inapplicable to her and assure a triple benefit under (c)1. As noted above, we find no sound basis for her proposed new reading of a statute that has never been so construed since its adoption in 2000. Blaine clearly returned to work approximately seven months after her first injury so we turn next to her contention that the ALJ erred in concluding for purposes of KRS 342.730(1)(c)2 that she made a weekly wage equal to or greater than her pre-injury average weekly wage.

The ALJ found as follows with respect to Blaine's return to work:

> The record is clear and it is stipulated that, following the first injury, Plaintiff returned to work at a wage equal to or greater than her average weekly wage at the time of the injury. The record is also clear her return to work was to a job in which the physical requirements were modified. However, she worked in her same job title at a wage equal to or greater than her average weekly wage at the time of the injury until her unfortunate second injury of April 11, 2008.

Blaine contests the wage finding both as to what the record reflects and as to the stipulations. The exact wage stipulations to which Blaine agreed, Stipulations 7 and 8, state:

9

7. Plaintiff's average weekly wage on June 26, 2007 was $1,202.80 and on April 28, 2011 was $1,287.50

8. Plaintiff returned to work after the June 26, 2007 work-related injury on January 28, 2008, at a wage equal to or greater than her average weekly wage and worked through April 28, 2011. Plaintiff has not worked since April 28, 2011.

As we recently held in *Hale v. CDR Operations, Inc.*, 474 S.W.3d 129, 139-40 (Ky. 2015), stipulated facts are binding on the ALJ and neither the ALJ nor the Board (or Courts, for that matter) are free to set aside a valid stipulation *sua sponte*. Thus, to the extent the above stipulations address a factual issue, they are binding.

On their face, Stipulations 7 and 8 can be plainly read to establish that Blaine did in fact return to work at a wage equal to or greater than her pre-injury average weekly wage. Blaine wishes to parse the meaning of these stipulations now by stating that they do not reflect the fact that at some point after January 2008, but before the April 2011 second injury, her wages dropped below her pre-injury average wage, *i.e.*, she did not continuously work for a wage equal to or greater than her pre-injury average wage. This may well be the case but KRS 342.730(1)(c)2 simply looks at the wage at which the employee returns to work, and the stipulations, particularly No. 8, conclusively establish that she returned to work in January 2008 at a wage equal to or greater than her pre-injury wages. The ALJ was not required to and, indeed, not authorized to look beyond this stipulation by the parties but had he done so, it would not change the fact that Blaine's compensation was "equal to or greater" at the time of her January 2008 return to work.

As noted above, in deciding whether KRS 342.730(1)(c)1 or (c)2 is most appropriate, the ALJ must consider whether a worker "is unlikely to be able to continue earning a wage that equals or exceeds the wage at the time of injury for the indefinite future." *Fawbush*, 103 S.W.3d at 12. This is the part of the analysis that the Board concluded the ALJ performed deficiently:

> The CALJ's analysis of whether Blaine would have continued working at an equal or greater wage for the indefinite future following the June 26, 2007, injury is deficient as a matter of law. While the CALJ stated the "restrictions placed on Plaintiff by Dr. Schoettle would allow Plaintiff to continue working for an indefinite period barring significant change in her physical condition," the CALJ failed to discuss and analyze these restrictions with any amount of specificity in his "Discussion and Analysis" section. [Footnote omitted]. The CALJ's comment on Blaine's "work ethic" and DRA's "employment practices" in the March 27, 2014, Opinion, Award, and Order, speaks more to Blaine's ability to continue in her current job, only one of many factors the CALJ should have considered. *See Fawbush*; *Adkins [v. Pike County Bd. of Educ.*, 141 S.W.3d 387, 390 (Ky. App. 2004)].

The Board instructed the ALJ to determine on remand whether it was likely Blaine would have continued earning equal or greater wages indefinitely had the second injury not occurred given the factors to be considered. Ultimately, as the Court of Appeals concluded, an award pursuant to KRS 342.730(1)(c)1– a triple benefit – may be *"permissible* depending on the ALJ's findings, [but] it is *not required* as Blaine argues on appeal." (Emphasis in original).

## CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals' opinion affirming the decision of the Workers' Compensation Board which remanded this case to the ALJ with specific instructions to first determine Blaine's

11

entitlement to permanent total disability benefits and, if she is not entitled to such benefits, to then determine her permanent partial disability benefits using a proper *Fawbush* analysis.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Norman E. Harned
KERRICK BACHERT PSC

COUNSEL FOR APPELLEE,
DOWNTOWN REDEVELOPMENT
AUTHORITY, INC.

Richard Hartsock
FOGLE KELLER PURDY, PLLC