# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 14, 2019
NOT TO BE PUBLISHED

FINAL

DATE 8/29/19 JME

# Supreme Court of Kentucky

2018-SC-000265-WC

RAYMOND BRYANT                                    APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                    CASE NO. 2017-CA-000035-WC
WORKERS' COMPENSATION BOARD NO. WC-13-64322

JESSAMINE CAR CARE; HON. JOHN                    APPELLEES
COLEMAN, ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD

AND                    2018-SC-000269-WC

JESSAMINE CAR CARE                                APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                    CASE NO. 2017-CA-000015-WC
WORKERS' COMPENSATION BOARD NO. WC-13-64322

RAYMOND BRYANT; HON. JOHN                         APPELLEES
COLEMAN, ADMINISTRATIVE LAW JUDGE;
HON. WILLIAM RUDLOFF,
ADMINISTRATIVE LAW JUDGE; WORKERS'
COMPENSATION BOARD; AND KENTUCKY
COURT OF APPEALS

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING IN PART, REVERSING IN PART, AND REMANDING**

Raymond Bryant was injured while working as a technician at Jessamine Car Care. He initiated a claim for benefits pursuant to Kentucky Revised Statutes (KRS) Chapter 342, the Workers' Compensation chapter. After several years of treatment and litigation, an Administrative Law Judge (ALJ) awarded Bryant temporary total disability (TTD) benefits for two separate periods, and permanent partial disability (PPD) benefits after Bryant had reached maximum medical improvement (MMI). The ALJ also awarded medical expenses related to the injury. Both the Workers' Compensation Board (Board) and the Court of Appeals affirmed. Both Bryant and Jessamine Car Care have appealed to this Court as a matter of right.

## I.    BACKGROUND

Bryant began working for Jessamine Car Care as a technician before Patty and Mike Johns took over ownership and management of the shop. The previous owner passed away after battling cancer and the Johnses kept Bryant on as an employee. On June 13, 2013, Bryant was assisting another mechanic with removing a transmission from a Jeep Liberty when the transmission came off the jack and caught Bryant's arm. Bryant attempted to regain control of the transmission, but it fell to the ground, causing a strain on his lower back. He stated that he told Mike about the incident, along with Patty. He told them that he felt he could work through the pain and would be fine. Mike testified that he recalled Bryant telling them of the incident with the transmission but

2

never told them he was injured as a result. Bryant struggled with pain over the next several weeks, which he testified caused his work to become sluggish and more painful. He had an appointment with his primary care physician, Dr. Madonna Hall, on August 5, 2013, seeking pain medication for pain in his neck and hips. On September 25, 2013, Patty and Mike terminated Bryant from his position. Bryant had a previously scheduled appointment with Dr. Hall on October 1, 2013. At that appointment, he gave a history of the June 2013 transmission incident and right-sided lower back pain since that time. He was prescribed medications and taken off work for two weeks; he continued treatment but alleged worsening pain. On December 4, 2013, Dr. Hall recommended physical therapy. Bryant's claim for the physical therapy was denied, and he was unable to obtain the recommended treatment.

On December 16, 2013, Bryant went to St. Joseph Hospital's Emergency Room. He was diagnosed with degenerative disc disease of the lumbar spine. He began treatment with Dr. Harry Lockstadt, who determined that Bryant likely had a lumbar strain involving the sacroiliac complex. He recommended physical therapy and a 15-pound lifting restriction. During his deposition, Dr. Lockstadt opined that the injury was caused by a force applied through the back, down the discs and joints, causing inflammation and pain. Dr. John Vaughn evaluated Bryant on May 7, 2014, diagnosing mechanical lower back - pain and lumbar strain. Dr. Vaughn recommended a 50-pound lifting restriction but recommended against injections or fusion surgery.

3

At the later hearings with the ALJ, Jessamine Car Care presented video evidence from August 2014, that they allege proved Bryant had returned to work. The video surveillance showed Bryant reporting to a garage called Crowe's Master Tech each morning from August 26, 2014 to August 29, 2014. The video showed Bryant reporting to the garage, opening the business, being behind the counter, and under vehicle hoods. When questioned about the video, Bryant stated that he was not paid for this time. He had been in discussions with the owner about assisting him in eventually opening another auto shop. Bryant said that he gave some advice to some of the younger workers, spoke with people, and "h[u]ng out," but Bryant ultimately determined that the owner could not afford to pay him a reasonable wage for his experience. Bryant admitted that he was given keys to the building for a week when he opened and closed up the shop while the head tech was on vacation. He stated that he was not paid for any work there. There was no proof of payment or testimony from the head technician or shop owner at Crowe's Master Tech in the record.

Bryant saw Dr. Lockstadt again on April 29, 2015. At that time, Dr. Lockstadt felt Bryant had developed secondary osteophyte changes in the sacroiliac joint as a result of the lumbosacral sprain and determined conservative management of the condition had failed. He recommended surgical arthrodesis to the sacroiliac joint on the right side. Bryant agreed and the surgery was performed on August 12, 2015. On November 23, 2015, Dr. Lockstadt found that Bryant had a successful fusion of the joint, allowed him

4

to perform work activities as tolerated, and recommended a 40-pound lifting restriction with a return to full activity on February 23, 2016. In an undated later report, Dr. Lockstadt released Bryant to medium level work, lifting up to 50 pounds occasionally. Bryant also testified the surgery was an immense help for his condition and eased his pain. However, he felt he could not return to the heavy lifting work he had been performing previously as it required too much squatting and lifting while working on very hefty and cumbersome items like transmissions.

ALJ William Rudloff was first assigned to the case. In an interlocutory order on July 28, 2014, he found that Bryant had suffered significant trauma to his back as a result of the work-related accident on June 13, 2013. From the testimony presented, he also determined that Bryant gave due and timely notice of the injury. He ordered TTD payments retroactive to September 26, 2013. ALJ John Coleman later took over Bryant's case and issued a Final Order on May 11, 2016. ALJ Coleman adopted ALJ Rudloff's factual findings and further determined, noting Dr. Lockstadt's testimony, that Bryant had established his burden of proof as to causation, work relatedness, and injury. He also determined, as ALJ Rudloff had, that Bryant's testimony as to his notification of Mike regarding the incident was satisfactory and credible. ALJ Coleman found that Bryant had a 12% impairment rating under the *AMA Guides*, resulting in a 12% permanent partial disability (PPD) rating. He found the application of the 3 multiplier in KRS 342.730(1)(c)(1) did not apply based on Bryant's age, certifications, supervisory ability, and Bryant's testimony as to

5

contemplation of returning to work. However, he did determine the 2 multiplier applied under KRS 342.730(1)(c)(2). The ALJ ordered PPD benefits accordingly.

Noting Jessamine Car Care's evidence of Bryant at Crowe's Master Tech from August 26, 2014 to August 29, 2014, the ALJ determined that, at that time, Bryant was able to return to employment. He ordered that the TTD payments should be paid from October 1, 2013 through August 24, 2014 and from August 12, 2015 (the date of Bryant's surgery) through February 23, 2016, the date at which Dr. Lockstadt determined Bryant had reached MMI. The ALJ also ordered payment of medical expenses related to the cure and relief of Bryant's ligamentous strain and sacroiliac joint injury. Interest of 12% per annum was ordered on all due and unpaid installments. Both the Board and the Court of Appeals affirmed the orders of the ALJs.

## II. STANDARD OF REVIEW

The issues on appeal before this Court primarily address the sufficiency and interpretation of the evidence leading to the ALJ's findings, rather than presenting issues of law or statutory interpretation. The ALJ has the sole discretion to determine the quality, character, and substance of the evidence and may reject any testimony and believe or disbelieve various parts of the evidence regardless of whether it comes from the same witness or the same party's total proof. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). Bryant, as the claimant, bore the burden of proving the elements of his claim. *See Gibbs v. Premier Scale Co./Indiana Scale Co.*, 50 S.W.3d 754,

6

763 (Ky. 2001). On the allegations of error in which Bryant failed to convince the ALJ, Bryant must establish on appeal that the evidence was so overwhelming as to compel a favorable finding. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). On those issues, Bryant must show that the ALJ's findings were clearly erroneous and unreasonable. *Id.* In contrast, on Jessamine Car Care's allegations of error, on which Bryant prevailed before the ALJ, the question on appeal is whether the ALJ's findings are supported by substantial evidence. *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999). "Substantial evidence has been defined as some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *Id.* at 481-82. As to those issues, the question we must answer is whether the ALJ's findings were "so unreasonable under the evidence that [they] must be viewed as erroneous as a matter of law." KRS 342.285; *Ira A. Watson Dep't. Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky. 2000).

### III. ANALYSIS

### A. THE ALJ DID NOT ERR IN TERMINATING TTD BENEFITS.

The ALJ determined that Bryant failed to meet his burden of proof on his right to TTD benefits between August 2014, when he was seen at Crowe's Master Tech, and his final surgery in August 2015. "A party who fails to meet its burden of proof before the ALJ must show that the unfavorable finding was clearly erroneous because overwhelming favorable evidence compelled a favorable finding, *i.e.*, no reasonable person could have failed to be persuaded by the favorable evidence." *Gaines Gentry Thoroughbreds/Fayette Farms v.*

7

*Mandujano*, 366 S.W.3d 456, 461 (Ky. 2012) (citing *Special Fund*, 708 S.W.2d at 643; *Mosely v. Ford Motor Co.*, 968 S.W.2d 675 (Ky. App. 1998); *REO Mechanical v. Barnes*, 691 S.W.2d 224 (Ky. App. 1985)). "Evidence that would have supported but not compelled a different decision is an inadequate basis for reversal on appeal." *Mandujano*, 366 S.W.3d at 461 (citing *McCloud v. Beth-Elkhorn Corp.*, 514 S.W.3d 46 (Ky. 1974)).

TTD refers to "the condition of an employee who has not reached [MMI] from an injury and has not reached a level of improvement that would permit a return to employment." KRS 342.0011(11)(a). "[T]here are two requirements for TTD: 1.) that the worker must not have reached MMI; and 2.) that the worker must not have reached a level of improvement that would permit a return to employment." *Double L Const., Inc. v. Mitchell*, 182 S.W.3d 509, 513 (Ky. 2005) (citing *Magellan Behavioral Health v. Helms*, 140 S.W.3d 579, 581 (Ky. App. 2004)). "The purpose for awarding income benefits such as TTD is to compensate workers for income that is lost due to an injury, thereby enabling them to provide the necessities of life for themselves and their dependents." *Mitchell*, 182 S.W.3d at 514. "[A]n employee is entitled to receive TTD benefits until such time as []he reaches [MMI] or has improved to the point that []he can return to employment." *Trane Commercial Systems v. Tipton*, 481 S.W.3d 800, 803 (Ky. 2016).

"[I]t is []not unreasonable, and it does not further the purpose for paying income benefits, to pay TTD benefits to an injured employee who has returned to employment simply because the work differs from what []he performed at the

time of injury." *Id.* at 807. "[A]bsent extraordinary circumstances, an award of TTD benefits is inappropriate if an injured employee has been released to return to customary employment, *i.e.* work within her physical restrictions and for which she has the experience, training, and education; *and* the employee has actually returned to employment." *Id.* The *Tipton* Court noted that there may be "extraordinary circumstances [that] might justify an award of TTD benefits to an employee who has returned to employment ..." *Id.* In such circumstances, "an ALJ must take into consideration the purpose for paying income benefits and set forth specific evidence-based reasons why an award of TTD benefits in addition to the employee's wages would forward that purpose." *Id.*

Importantly, "employment," unlike "work," is not defined in the statutory scheme. Thus, there does not seem to be a remuneration element to the "return to employment" ability under the TTD requirements.[1] Here, the ALJ determined the video presented by Jessamine Car Care showed that Bryant

---

[1] We note on this point that, in *Mitchell*, we stated "if a worker has not reached MMI, a release to perform minimal work rather than 'the type that is customary or that he was performing at the time of his injury' does not constitute 'a level of improvement that would permit a return to employment' for the purposes of KRS 342.0011(11)(a)." 182 S.W.3d at 514 (quoting *Central Kentucky Steel v. Wise*, 19 S.W.3d 657, 659 (Ky. 2000)). However, we recognized the distinguishing characteristics of *Mitchell* in *Livingood v. Transfreight, LLC*, 467 S.W.3d 249, 254 (Ky. 2015), where we stated that *Mitchell* "involved concurrent employment[.]" "There, the claimant was injured in his full-time job as a carpenter. He had a second job as a janitor 15 hours a week. The employer argued that the claimant was not entitled to TTD, because he had worked continuously as a janitor after the injury, although he could not perform his carpentry job." *Livingood*, 467 S.W.3d at 254, fn. 1 (citing *Mitchell*, 182 S.W.3d at 514-15). The *Mitchell* court determined that the relevant ability to work referred to the job in which the claimant was injured. *Livingood*, 467 S.W.3d at 254, fn. 1 (citing *Mitchell*, 182 S.W.3d at 514-15).

9

had the ability to "return to employment," and was, therefore, not entitled to TTD at that point. The ALJ interpreted this video as showing Bryant was capable of returning to employment, even though he noted that Bryant stated he received no compensation for the activity in the video. He also noted that there were no evidence-based reasons for awarding the TTD payments until Bryant was again taken off work entirely by Dr. Lockstadt. The Board affirmed this finding, noting that "Bryant was capable of performing regular work after August 26, 2014, due to what was documented in the surveillance video."

To be eligible for TTD, the claimant cannot be at MMI *or* have reached a point where he or she can return to employment. Notably, unlike in the PPD analysis, it does not require an inability to return to the *same type* of work; it requires an inability to return to *any* employment. Even if the video fails to show Bryant lugging heavy pieces of equipment or doing actual mechanical work, he admitted that he was opening and closing the store, looking over the books, supervising other employees, and advising other employees in this commercial setting. Although the evidence from Bryant and other witnesses may support the opposite conclusion, the ALJ's decision finding Bryant had the ability to return to employment was based on substantial evidence. Because the evidence does not *compel* an opposite finding, we find no error and affirm this finding of the ALJ.

Bryant also argues that ALJ Coleman arbitrarily substituted his own ruling on TTD for that of ALJ Rudloff without any new evidence to support this

10

change. The legal premise Bryant cites is correct; the Court of Appeals has stated:

> [T]he reversal of prior dispositive factual findings rendered by an ALJ in an interlocutory opinion, absent introduction of new evidence, fraud, or mistake, is arbitrary, unreasonable, unfair, and unsupported by sound legal principles. In such instances, the ALJ exceeds the exercise of reasonable discretion, operates outside the bounds of statutory authority, and must be reversed.

*Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 867 (Ky. App. 2009). The Court further clarified:

> Legal consequences streaming from an ALJ's factual determinations must not be left to ebb and flow according to the changing current of the ALJ's mere whim as fact-finder. Thus, absent newly discovered evidence, fraud, or mistake, parties have a reasonable expectation that they may rely on factual findings that have been fully and fairly adjudicated by an ALJ, even when rendered in an interlocutory decision.

*Id.* at 686 (citing *Garrett Mining Co. v. Nye*, 122 S.W.3d 513, 522 (Ky. 2003)).

As these holdings make clear, a change in factual findings *absent newly discovered evidence* is arbitrary and unreasonable. But ALJ Coleman was presented with *new evidence* that ALJ Rudloff did not have when he entered the original TTD order on July 28, 2014. Jessamine Car Care filed a motion on October 24, 2014 to remove the claim from abeyance, reopen the case for submission of proof, refer Bryant to the Department of Insurance, reconsider and set aside the interlocutory award, and dismiss Bryant's case. As support for its motion, Jessamine Car Care cited video surveillance footage from Crowe's Master Tech. Jessamine Car Care stated it was "attached" to the motion. However, after this evidence was presented to the ALJ, there were *no*

11

*new orders* on TTD until ALJ Coleman's final award in 2016. ALJ Coleman noted in his May 1, 2016 hearing order that Jessamine Car Care had filed the surveillance video as evidence in its case. Thus, contrary to Bryant's assertion, there was new evidence to support this new factual finding. As such, we find no error and affirm this portion of the ALJ's final order.

## B.   THE ALJ ERRED IN DENYING BRYANT A 3 MULTIPLIER.

Again, Bryant failed to prevail on this issue before the ALJ. We will not reverse the ALJ's findings absent clear error and overwhelming evidence that compels an opposite finding. *See Mandujano*, 366 S.W.3d at 461 (citations omitted). In awarding benefits for PPD, the average weekly wage is subject to certain multipliers. "If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for [PPD] shall be multiplied by three (3) times the amount otherwise determined" under the statutory scheme. KRS 342.730(1)(c)(1). "If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury," the benefits for PPD are determined subject to KRS 342.730(1)(b). But, "[d]uring any period of cessation of that employment, temporary or permanent, for any reason, with or without cause," the PPD payments during that period "shall be two (2) times the amount otherwise payable[.]" KRS 342.730(1)(c)(2). In *Fawbush v. Gwinn*, 103 S.W.3d 5, 12 (Ky. 2003), this Court clarified "that an ALJ is authorized to determine which provision is more appropriate on the facts."

12

The ALJ here conclusively determined that Bryant "lacks the physical capacity to return to his job as a 'heavy mechanic.'" But, the ALJ also noted Bryant's relatively young age, multiple certifications in his field, and the high demand for his services based on Bryant's own testimony. As such, the ALJ found that Bryant "will be able to return to earning same or greater wages given his advanced experience, relatively young age, advanced certifications, and reputation for work in that business community." The ALJ determined that the 3 multiplier was not justified under the statutory scheme. However, he did find that Bryant was entitled to the 2 multiplier after his termination from Jessamine Car Care, as the termination was not a result of his own intentional, deliberate actions. At the time of the final order, Bryant was still unemployed.

The Board affirmed, finding that ALJ Coleman applied a "thorough" *Fawbush* analysis. The Court of Appeals also affirmed, simply stating that the ALJ's finding that "Bryant had the ability to return to work in a supervisory capacity at the same or greater wage was supported by substantial evidence." On appeal to the Court, Bryant continues to argue that the ALJ misapplied the *Fawbush* analysis. Bryant has not returned to work, his permanent restrictions forbid the type of work he was performing at the time of his injury, and, because of his restrictions, it is doubtful he will be able to earn income even close to his pre-injury wages. Bryant's premise is correct, but the reasoning is somewhat faulty. Regardless, the ALJ, the Board, and the Court of Appeals have misconstrued the requirements of a *Fawbush* analysis.

13

Under this Court's precedent, an employee is entitled to the 3 multiplier if he cannot return to the type of work he was performing at the time of the injury; this is clear from the plain language of KRS 342.730(1)(c)(1). If the employee is working two jobs when the injury occurs, then the ALJ must examine the type of work involved in the job which the claimant was performing at the time of the injury. *See Lowe's No. 0507 v. Greathouse*, 182 S.W.3d 524, 526-27 (Ky. 2006). Thus, if claimant is injured at Job 1 but loses the ability to perform Job 2, there is not necessarily an entitlement to the 3 multiplier. If, however, claimant is injured at Job 1 and loses the ability to perform Job 1 but can still perform Job 2, there is still an entitlement to the 3 multiplier. "[T]he ALJ must analyze all of the evidence to determine what jobs the claimant performed at the time of [his] injury and then find whether []he retains the physical capacity to return to *those jobs*." *Two Chicks, LLC v. Lunte*, No. 2015-SC-000407-WC, 2016 WL 3371018, *4 (Ky. June 16, 2016) (emphasis added). Thus, it is clear from this precedent, that it is the claimant's ability to perform the actual job he was performing at the time of the injury that is relevant. "If []he did not retain the physical capacity to return to those jobs, even if []he returned to the same job classification, []he would be entitled to the three multiplier." *Id.*

The multiplier analysis under KRS 342.730(1)(c) is a multi-step process. The first step is to determine whether the claimant has "the physical capacity to return to the type of work" he or she was performing at the time of the injury. ALJ Coleman specifically made a finding that Bryant lacked the

14

"physical capacity to return to his job as a 'heavy mechanic.'" This finding is supported by Bryant's testimony, as well as the testimony of his treating doctors. Thus, under KRS 342.730(1)(c)(1), Bryant does not "retain the physical capacity to return to the type of work that the employee performed at the time of injury." The next step is to determine whether the claimant has returned to employment at a wage equal to or greater than the average weekly wage at the time of the injury. If the claimant has *not* returned to employment, then the analysis ends, and the 3 multiplier applies.

The *Fawbush* analysis only comes into fruition if the claimant *has*, in fact, returned to employment. Then the ALJ must determine whether the claimant has the ability to sustain those equal or greater wages. ALJ Coleman erred here in attempting to determine Bryant's *potential* ability to work as a supervisor in the same field for the same or greater wages. But, Bryant had not returned to any paying employment and there was *no evidence* in the record of what a supervisor in the field may make. In fact, Bryant testified that the owner of Crowe's Master Tech did not have the financial resources to pay him his pre-injury wage. Additionally, Bryant's ability to do a significantly *different* type of work is irrelevant to the 3 multiplier analysis when he *had not returned to employment.* Under the statutory language, Bryant, as determined by the ALJ, lacked the physical capacity to return to his work as a technician due to his inability to continue the heavy lifting required in that capacity. He had not returned to any employment. As such, Bryant is entitled to the 3

15

multiplier. We reverse on this issue and remand back to the ALJ for computation of Bryant's award in accordance with this holding.

Additionally, the ALJ erred in determining the 2 multiplier applied under KRS 342.730(1)(c)(2). That multiplier only applies if the claimant returns to work after the injury. After Bryant was terminated, he did not *return* to work. ALJ Coleman cited to Bryant's June 2013 injury but that he continued to work until September. However, this *continuation* of work is not a return to work under KRS 342.730(1)(c)(2). To qualify as such a "return," there must be a cessation followed by a resumption. Bryant simply continued on in his regular employment until he was discharged. Since that time, ALJ Coleman made no finding of a "return" to employment at a wage equal to or greater than his average weekly wage at the time of injury.[2] The 2 multiplier has no bearing on Bryant's case.

## C. THE ALJ DID NOT ERR IN FINDING BRYANT SUSTAINED AN "INJURY."

Bryant prevailed on this issue in front of the ALJ. Thus, we must determine if substantial evidence supports the ALJ's finding. As stated, "[s]ubstantial evidence has been defined as some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people." *McNutt Construction/First General Services v. Scott*, 40 S.W.3d 854, 860 (Ky. 2001) (citing *Smyzer v. B.F. Goodrich Chemical Co.*, 474

---

[2] Even if we were to consider the week spent at Crowe's Master Tech a "return" to work, there was no proof in the record that Bryant was paid any wages, much less wages equal to or greater than his average weekly wage at the time of the injury. In fact, ALJ Coleman specifically found that he was not paid for his work at that time.

16

S.W.2d 637 (Ky. 1971)). Evidence that supports "a different conclusion than that which the ALJ reached ... is not an adequate basis for reversal on appeal." *Scott*, 40 S.W.3d at 860 (citing *McCloud*, 514 S.W.2d 46).

KRS 342.0011(1) states that an injury is: "any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings." ALJ Coleman adopted ALJ Rudloff's findings on this issue and, also relying upon the deposition of Dr. Lockstadt, determined that the work-related incident, as described by Bryant, caused his injury. Jessamine Car Care cites to the stipulations of the parties that the alleged injury occurred on June 13, 2013 as the basis for the ALJ's error. Jessamine Car Care argues that its evidence compels a finding that any alleged incident with the transmission *must have* occurred on June *14*, 2013 and, thus, the ALJ's finding of an injury on the 13th is clearly erroneous.

The record reflects the stipulation of an alleged injury on June 13, 2013. Jessamine Car Care presented the service record from the Jeep Liberty in question, showing that the Jeep arrived at the facility on June 12, 2013.[3] The record also notes "6/13/13 10:11 called in". At her deposition, Patty Johns stated this note referred to a call to the warranty company for approval to do

---

[3] Jessamine Car Care states in its brief that these "business records ... reveal the Jeep arrived at that facility on June 13, 2013[.]" However, the form clearly has a note at the top of the page stating "car brought in 6/12/13". *See* Original Record of the Workers' Compensation Board (hereinafter referred to as Record) at page 180.

17

the work on the transmission. *See* Record at 153. She testified that the business did not receive authorization until June 14th, so no work would have been done on the vehicle until that time. In response to Patty's statements, Bryant testified that on June 13, 2013, "It was kind of slow and they wanted the box on the ground, so it was go ahead and get the transmission on the table." Record at 215.

It is true that "stipulated facts are binding on the ALJ and neither the ALJ nor the Board (or Courts, for that matter) are free to set aside a valid stipulation *sua sponte.*" *Blaine v. Downtown Redevelopment Authority, Inc.*, 537 S.W.3d 811, 816 (Ky. 2017). The crux of Jessamine Car Care's argument is that the stipulations require a finding that, if any injury occurred, it happened on June 13, 2013. But, it also argues that its proof *conclusively* establishes that the Jeep was not physically worked on in the shop until June 14, 2013. The first portion of Jessamine Car Care's argument is sound: the stipulation is binding. The injury occurred on June 13, 2013. But, the evidence does not require a finding by the ALJ that the Jeep Liberty was not serviced until June 14, 2013. Bryant testified, explaining what occurred and stated that the work occurred on June 13, 2013. He recalled it being a Thursday because he knew a weekend was coming up and he felt that he would be able to recover over the weekend from the injury. The evidence was sound and supports the ALJ's finding that an injury occurred on June 13, 2013, as stipulated.

18

Despite Jessamine Car Care's attempt to characterize its evidence as conclusive, the testimonies of the parties conflicted. Patty Johns testified that, based on this record and the business practices, no one would have worked on the Jeep Liberty until after authorization, which occurred on June 14, 2013. Bryant testified that June 13, 2013 was a slow day, so he and another employee went ahead and started removing the transmission from the vehicle to begin doing work. "[T]he ALJ is free 'to believe part of the evidence and disbelieve other parts of the evidence whether it came from the same witness or the same adversary party's total proof.'" *Voith Industrial Services, Inc. v. Gray*, 516 S.W.3d 817, 821 (Ky. App. 2017) (quoting *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977)). Clearly, the ALJ found Bryant's testimony more credible. That testimony provides substantial evidence for the ALJ's finding. The ALJ did not err in determining that an injury occurred on the stipulated date.

### D. THE ALJ DID NOT ERR IN FINDING NOTICE WAS PROPERLY GIVEN TO THE EMPLOYER.

KRS 342.185 requires that "notice of the accident" be "given to the employer as soon as practicable after the happening thereof" to maintain a claim for compensation under the chapter. Again, Bryant prevailed on this issue and, if substantial evidence supports the ALJ's finding, we will not reverse the ALJ's decision. Jessamine Car Care again premises this argument on the idea that the evidence it presented as to service of the Jeep requires a finding that no injury occurred on June 13, 2013. As discussed previously, this is simply not accurate. Jessamine Car Care also cites to Mike Johns's

19

testimony that, although Bryant told him about an incident where he "caught" a transmission, Bryant never reported an injury related to that incident. However, Bryant testified extensively, multiple times, about reporting to Mike and Patty about the incident and the ensuing injury.[4] Bryant stated that Mike and Patty told him to take breaks as he needed to accommodate the injury. The ALJ's findings were rooted in substantial evidence. Both ALJs found Bryant's testimony more credible. We will not reverse as there is no clear error present.

**E. THE ALJ DID NOT ERR IN FAILING TO REFER BRYANT'S CLAIM TO THE KENTUCKY DEPARTMENT OF INSURANCE FOR AN INVESTIGATION OF FRAUD.**

It is unclear exactly what remedy Jessamine Car Care is seeking in this allegation of error. Its contention is that Bryant committed fraud by returning to work while making a claim for workers' compensation; the ALJ, according to Jessamine Car Care, should have known this and referred Bryant's claim to the Kentucky Department of Insurance for investigation *rather* than adjudicating the claim on the merits. "Any professional practitioner licensed or regulated by the Commonwealth" who has "knowledge or believe[es] that a fraudulent insurance act or any other act or practice which may constitute a felony or misdemeanor under this subtitle is being or has been committed shall send to the division a report or information pertinent to [that] knowledge or belief[.]" KRS 304.47-050(2). Thus, if the ALJ here believed that Bryant had

---

[4] In fact, Mike's testimony, to a certain extent, corroborates Bryant's version of events as Mike acknowledged that Bryant had mentioned an incident with a transmission to him and Patty.

committed some fraudulent insurance act, this statute seems to create a duty to report that knowledge. However, ALJ Coleman specifically found that the allegation of fraud was "disingenuous." Bryant was not being paid TTD benefits by Jessamine Car Care at the time the Crowe's Master Tech video was recorded, even though Jessamine Car Care had been ordered to pay those benefits. "Thus, it matters not whether the plaintiff was paid for the activities depicted in the video[,]" according to the ALJ. The ALJ found no proof of Bryant "fraudulently receiving any benefits" because Bryant never received any benefits for the period in question. Even if this Court were to disagree with that conclusion, ALJ Coleman had no statutory duty to report Bryant to the Department of Insurance when he did not find any reasonable evidence leading to a belief or knowledge of fraudulent activity. There is no error here for this Court to correct.

**F.    THERE IS NO NEED FOR REMAND TO RE-ASSESS INTEREST.**

KRS 342.040 governs the interest rate of income benefits. The statute was amended in both 2017 and 2018. Jessamine Car Care argues that the lowered 6% interest rate from the June 29, 2017 amendment should apply to Bryant's award. However, the Legislative Research Commission note from the 2017 amendment states that the change will "apply to all workers' compensation orders entered or settlements approved on or after June 29, 2017, the effective date of that Act."  Both ALJ orders in Bryant's case were entered prior to this effective date (July 28, 2014 and May 11, 2016). Additionally, there is no settlement involved in this case as Jessamine Car Care

21

has refused to pay any benefits as ordered by the ALJ. Thus, the statutory amendment is inapplicable and there is no need for remand to apply this statutory change on the ordered interest.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Court of Appeals is affirmed in part and reversed in part. We remand back to the ALJ for computation of Bryant's award with application of the 3 multiplier as required by law.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting. All concur.

COUNSEL FOR APPELLANT/APPELLEE, RAYMOND BRYANT:

Kenneth Burr Fouts II


COUNSEL FOR APPELLANT/APPELLEE, JESSAMINE CAR CARE:

Gregory Lonzo Little
Ferreri Partners, PLLC


COUNSEL FOR APPELLEE, WORKERS' COMPENSATION BOARD:

Dwight Taylor Lovan


COUNSEL FOR APPELLEE, JOHN B. COLEMAN, ADMINISTRATIVE LAW JUDGE:

John B. Coleman


COUNSEL FOR APPELLEE, WILLIAM J. RUDLOFF, ADMINISTRATIVE LAW JUDGE:

William J. Rudloff


COUNSEL FOR APPELLEE, KENTUCKY COURT OF APPEALS:

Jeanne Deborah Anderson